## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER** 1718 Connecticut Avenue, N.W. Suite 200 Washington, D.C. 20009, | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | Civil Action No. 17-670 |
| **INTERNAL REVENUE SERVICE** 1111 Constitution Avenue, N.W. Washington, D.C. 20224 | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully opposes the motion by Defendant Internal Revenue Service ("IRS") to dismiss Counts I-V of the Complaint. Mot. Dismiss, Dkt. No. 14. EPIC has exhausted its administrative remedies. The agency's lengthy argument—that EPIC failed to obtain the consent of the taxpayer—is irrelevant to the processing of this particular FOIA request. This matter is properly before this Court. Fed. R. Civ. P. 12(b)(1), (b)(6). Moreover, the agency may not prevail on a motion to dismiss where there are multiple "plausible" arguments based on the facts alleged to provide relief. Finally, simultaneous review of the claims under the Freedom of Information Act ("FOIA") and the Administrative Procedure Act ("APA") is necessary because of the arguments set forward by the agency and the regulation at issue in this case. The Defendant's motion to dismiss should be denied.

EPIC's FOIA request and Complaint sought the release of President Donald J. Trump's tax records under 26 U.S.C. § 6103(k)(3), a provision enacted to ensure "integrity and fairness in administering the tax laws." *Confidentiality of Tax Return Information: Hearing Before the H. Comm. on Ways and Means*, 94th Cong. 23 (1976) (statement of Donald C. Alexander, Commissioner of Internal Revenue). Section 6103(k)(3) permits the disclosure of information about a taxpayer to "correct a misstatement of fact published or disclosed" about that taxpayer's returns or transactions with the IRS, so long as disclosure is "necessary for tax administration purposes" and approved by the Joint Committee on Taxation (JCT).

Because EPIC has plausibly alleged multiple violations of the FOIA, the APA, and § 6103(k)(3) entitling it to relief, the Court should deny the IRS's motion to dismiss. Instead, the Court should order the agency to promptly identify all responsive, nonexempt records and to take all reasonable steps necessary to secure their release.

## BACKGROUND

On February 16, 2017, EPIC submitted a FOIA request to the Internal Revenue Service ("Original FOIA Request"). Dkt. No. 14-3; Complaint, Dkt. No. 1, ¶ 36. EPIC's Original FOIA Request sought "all of Donald J. Trump's individual income tax returns for tax years 2010 forward, and any other indications of financial relations with the Russian government or Russian businesses." Compl. ¶ 37. The Request "reasonably described" the records sought from the agency. 5 U.S.C. § 552(a)(3)(A). In a response to EPIC dated March 2, 2017 ("IRS Response"), Tax Law Specialist Michael Young acknowledged receipt of EPIC's request. Dkt. No. 14-4; Compl. ¶ 39. The IRS Response stated that the agency was "closing [EPIC's] request" with "no further action." Compl. ¶ 40. The Response was labeled a "final response." Compl. ¶ 40.

On March 29, 2017, EPIC submitted a renewed FOIA request and appeal ("Renewed FOIA Request and Appeal") to the IRS. Dkt. No. 14-5; Compl. ¶ 41. EPIC reiterated its request for "Donald J. Trump's tax returns for tax years 2010 forward and any other indications of financial relations with the Russian government or Russian businesses." Compl. ¶ 42. The Request "reasonably described" the records sought from the agency. § 552(a)(3)(A). EPIC explained its right to access such records under § 6103(k)(3) and urged the IRS Commissioner to "move promptly to obtain permission from the Joint Commission on Taxation to release the records EPIC has requested." Compl. ¶ 43.

On April 4, 2017, EPIC fellow John Davisson and IRS Disclosure Manager David Nimmo conducted a phone conference regarding EPIC's Renewed FOIA Request and Appeal. Compl. ¶ 45. During the phone conference, Nimmo stated that the IRS was closing EPIC's request. Compl. ¶ 46. Nimmo stated that "we're not going to do a (k)(3)" and that "we're not exercising (k)(3)." *Id.* Nimmo also stated that EPIC could "file a suit" and seek "judicial review." Declaration of John Davisson ("Davisson Decl.") ¶ 8.

In a response to EPIC dated April 6, 2017 ("IRS Final Response"), Nimmo acknowledged receipt of EPIC's Renewed FOIA Request and Appeal. Dkt. No. 14-6; Compl. ¶ 47. The agency response stated that the IRS would not consider EPIC's appeal. Compl. ¶ 48. The IRS Final Response also stated that the IRS was "closing EPIC"s request" and that "any future request regarding this subject matter w[ould] not be processed." Compl. ¶ 49. The response was again labeled a "final response." Compl. ¶ 48.

## STANDARD OF REVIEW

### I.    12(b)(6) Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only "contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In evaluating a motion to dismiss, the Court must 'treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Powell v. IRS*, No. CV 16-1682 (JEB), 2017 WL 2533348, at *1 (D.D.C. June 9, 2017) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). The Federal Rules of Civil Procedure "do not require 'detailed factual allegations' for a claim to survive a motion to dismiss," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), but rather "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Though plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," it is not a "probability requirement." *Banneker Ventures*, 798 F.3d at 1129 (quoting *Iqbal*, 556 U.S. at 678). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

In FOIA cases in particular, "the agency bears the ultimate burden of proof." *Powell*, No. CV 16-1682 (JEB), 2017 WL 2533348, at *5 (citing *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)). "At all times, courts must bear in mind that FOIA mandates a strong presumption in

favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *ACLU v. DOJ*, 655 F.3d 1, 5 (D.C. Cir. 2011)).

## II.   12(b)(1) Standard of Review

Where a "claim arises under the laws of the United States," the Court's jurisdiction is established—and a motion under Fed. R. Civ. P. 12(b)(1) defeated—"[u]nless the alleged claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or [is] wholly insubstantial and frivolous." *Haddon v. Walters*, 43 F.3d 1488, 1490 (D.C. Cir. 1995). Though "a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear [its] claims," *Garcia v. U.S. Citizenship & Immigration Servs.*, 168 F. Supp. 3d 50, 63 (D.D.C. 2016) (citing *Daimler Crystler Corp. v. Cuno*, 547 U.S. 332, 334 & n. 3 (2006)), "a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Welborn v. IRS*, 218 F. Supp. 3d 64, 72 (D.D.C. 2016) (citing *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)). Further, the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction . . . ." *Garcia*, 168 F. Supp. 3d at 64 (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

## ARGUMENT

## I.   THE IRS VIOLATED THE FOIA BY REFUSING TO PROCESS A REQUEST FOR RECORDS IN THE POSESSION OF THE AGENCY.

EPIC has plausibly stated three violations of the FOIA that entitle it to relief. First, by refusing to process EPIC's request for President Trump's tax records, the IRS violated 5 U.S.C. § 552(a)(6)(A)(i) (Count I). Second, by refusing to take reasonable steps to release all responsive information—including seeking disclosure approval from the Joint Committee on Taxation—the

IRS violated § 552(a)(8)(A)(ii)(II) (Count II). Third, by unlawfully withholding President

Trump's tax records, the IRS violated § 552(a)(3)(A) (Count III). EPIC has alleged more than

enough facts in the Complaint for the Court "to draw the reasonable inference that the [IRS] is

liable for the misconduct alleged." *Banneker Ventures*, 798 F.3d at 1129 (quoting *Iqbal*, 556 U.S.

at 678).

Further, EPIC's FOIA request was complete and perfected upon submission. Neither 26

U.S.C. § 6103 nor IRS regulations required EPIC to submit a written taxpayer authorization with

its request, as the IRS wrongly contends. IRS Mem. Supp. Mot. Dismiss ("IRS Mem.") 7–11.

EPIC's administrative remedies were thus exhausted when the IRS refused to process EPIC's

Renewed FOIA Request and Appeal, making judicial review of this matter appropriate.

### A. The IRS's motion must be denied as to EPIC's FOIA claims because the agency never refuted EPIC's claims under § 6103(k)(3).

The "FOIA requires that records and material in the possession of federal agencies be

made available on demand to any member of the general public." *NLRB v. Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 221(1978). As the D.C. Circuit has made clear, "[t]he

FOIA is a disclosure statute 'enacted to facilitate public access to Government documents.'"

*Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 190 (D.C. Cir. 2007)

(quoting *Dep't of State v. Ray,* 502 U.S. 164, 173 (1991)). The FOIA gives EPIC the right to

request and access President Trump's tax records because they are records in possession of the

agency that could be made available to the public under § 6103(k)(3). EPIC forcefully stated this

basis for its request in both the Complaint and the Renewed FOIA Request and Appeal. Compl. ¶

3 (quoting § 6103(k)(3)) ("There has never been a stronger claim to release tax returns 'to correct

misstatements of fact' than EPIC's FOIA request, now pending before the agency, for Donald J.

Trump's tax returns."); Renewed FOIA Request and Appeal 1 ("Specifically, EPIC has the right to these records "to correct . . . misstatement[s] of fact" pursuant to 26 U.S.C. § 6103(k)(3).").

Nevertheless, the IRS argues for the dismissal of EPIC's FOIA claims on the basis of § 6103(c)—an entirely different statutory provision that applies only to "designee[s] of [the] taxpayer." § 6103(c); IRS Mem. 1–3, 10. These arguments are fatally flawed. EPIC seeks records releasable under § 6103(k)(3), not under § 6103(c). Contra the IRS, EPIC had no obligation to prove "consent to . . . disclosure" under § 6103(c) or to satisfy IRS regulations that implement such a consent requirement. *E.g.*, 26 C.F.R. § 601.702(c)(5)(iii)(C). These provisions simply do not apply here.

In focusing only on § 6103(c), the IRS fails to explain how EPIC's FOIA request is in any way "imperfect" under the applicable statute and "published rules." IRS Mem. 10; § 552(a)(3)(A). At no point does the IRS contend that a taxpayer's written authorization is required to perfect a request for records releasable under § 6103(k)(3). And with good reason: neither § 6103(k)(3) nor IRS regulations impose such a requirement. *See infra* Part I.B.3; *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 149 (D.C. Cir. 1986) (noting that (k)(3) is one of three "exceptions from the prohibition of disclosure" in § 6103 that "pertain to disclosure" of taxpayer records "to the public at large"), *aff'd*, 484 U.S. 9 (1987). Apart from the agency's irrelevant § 6103(c) arguments, the IRS offers no explanation at all as to why EPIC's FOIA claims should be dismissed. *See* IRS Mem. 7–11.

Because the IRS has failed to rebut the substance of EPIC's FOIA claims, they are clearly "plausible on [their] face," *Twombly*, 550 U.S. at 570. The IRS's motion to dismiss should be denied as to Counts I-III.

**B.  EPIC has plausibly alleged that the IRS violated the FOIA and that EPIC is entitled to relief.**

Even if the IRS <u>had</u> raised arguments in favor of dismissal that concerned § 6103(k)(3),

EPIC's FOIA claims would still satisfy the "plausib[ility]" standard. *Twombly*, 550 U.S. at 570.

EPIC has alleged ample facts showing that it is entitled processing of its FOIA request and that

the records it seeks fall under § 6103(k)(3). Because the IRS has refused to process EPIC's

request, EPIC is entitled to relief, and the IRS's motion must be denied as to Counts I-III.

*1.  EPIC is entitled to request IRS records under the FOIA, which includes
tax return information releasable under 26 U.S.C. § 6103(k)(3).*

"Congress enacted the Freedom of Information Act in order 'to pierce the veil of

administrative secrecy and to open agency action to the light of public scrutiny.'" *Garcia*, 168 F.

Supp. 3d at 59 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "The basic

purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic

society, needed to check against corruption and to hold the governors accountable to the

governed." *Id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). Under

the FOIA, a requester is entitled to the "prompt[]" release of all nonexempt records "reasonably

describe[d]" in a conforming request. § 552(a)(3)(A). A requester is also entitled to a

determination "within 20 days (excepting Saturdays, Sundays, and legal public holidays) after

the receipt of any such request" and all "reasonable steps necessary to . . . release nonexempt

information[.]" §§ 552(a)(6)(A)(i), (8)(A)(ii)(II). "[F]ederal courts have jurisdiction to order the

production of records that an agency improperly withholds." *Garcia*, 168 F. Supp. 3d at 59

(citing § 552(a)(3)); *see also* § 552(a)(4)(B).

Though the FOIA creates a "presumption of openness requir[ing] that all doubts be

resolved against closure," *NRDC v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1184 (D.C.

Cir. 2000), the statute permits agencies to withhold several categories of documents. § 552(b).

Exemption 3 concerns records "specifically exempted from disclosure by [another] statute." §

552(b)(3). Section 6103 of the Internal Revenue Code, which addresses the privacy and

disclosure of taxpayer records, "is the sort of statute referred to by [Exemption 3]," *Church of*

*Scientology of Cal. v. IRS*, 484 U.S. 9, 11 (1987). It establishes a "general rule" that tax

"[r]eturns and return information shall be confidential." § 6103(a). But, as the D.C. Circuit has

made clear, § 6103 frequently requires the release of taxpayer records to FOIA requesters:

> The two statutes seem to us entirely harmonious; indeed, they seem to us quite
> literally made for each other: Section 6103 prohibits the disclosure of certain IRS
> information (*with exceptions for many recipients*); and FOIA, which requires all
> agencies, including the IRS, to provide nonexempt information to the public,
> establishes the procedures the IRS must follow in asserting the § 6103 (or any
> other) exemption.

*Church of Scientology of Cal.*, 792 F.2d at 149 (emphasis added).

One exception to § 6103's "general rule" of confidentiality—and the key provision in this

case—is § 6103(k)(3). It reads:

> Disclosure of return information to correct misstatements of fact.--The Secretary[1]
> may, but only following approval by the Joint Committee on Taxation, disclose
> such return information or any other information with respect to any specific
> taxpayer to the extent necessary for tax administration purposes to correct a
> misstatement of fact published or disclosed with respect to such taxpayer's return
> or any transaction of the taxpayer with the Internal Revenue Service.

*Id.* Notably, this provision permits the disclosure of taxpayer records "to the public at large"

rather than "specified private individuals . . . or government officials." *Church of Scientology of*

*Cal.*, 792 F.2d at 149 (citing § 6103(k)(3)).

---

[1] The IRS notes that § 6103(k)(3) only mentions the "Secretary of the Treasury, who is not a party to this case." IRS Mem. 17 n.8. However, the Secretary has delegated § 6103(k)(3) authority to the Commissioner of Internal Revenue. I.R.M. § 1.2.49.3 (noting the Commissioner's authority "[t]o permit the disclosure of returns and return information"). The Commissioner, in turn, has partially redelegated § 6103(k)(3) authority to two other IRS officials. I.R.M. § 1.2.49-1. Thus, EPIC properly named the IRS as the Defendant in this case.

Congress enacted § 6103(k)(3) as part of the Tax Reform Act of 1976, Pub. L. 94-455, § 1202, 90 Stat. 1520, 1678–79 (1976) (relevant section codified at 26 U.S.C. § 6103). In the wake of the Watergate scandal, members of Congress had grown "alarm[ed]" about the "political misuse of the Internal Revenue Service" by the Nixon Administration. *Federal Tax Return Privacy: Hearings Before the Subcomm. on Admin. of the Internal Revenue Code of the S. Comm. on Fin.*, 94th Cong. 92 (1975) (statement of Rep. Jerry Litton). Section 6103 was a direct response to these concerns, serving as a "legislative remedy to the flaws of Government exposed by the chain of abuses we call Watergate." 122 Cong. Rec. 24,013 (1976) (statement of Sen. Weicker).

Section 6103(k)(3) in particular was enacted to ensure "integrity and fairness in administering the tax laws" and to "protect . . . the tax system against unwarranted public attacks." *Confidentiality of Tax Return Information: Hearing Before the H. Comm. on Ways and Means*, 94th Cong. 23 (1976) (statement of Donald C. Alexander, Commissioner of Internal Revenue). The Senate Finance Committee, which added the draft text of § 6103(k)(3) to the Tax Reform Act, emphasized that the core purpose of subsection (k) was the disclosure of records (1) as a general matter of policy and (2) in response to specific fact-based determinations:

> The committee decided that it was necessary to allow the disclosure of returns and return information decided in certain miscellaneous situations. . . . In each situation, the committee decided either that the returns or return information should be public as a matter of policy, or that the reasons for the limited disclosures involved outweighed any possible invasion of the taxpayer's privacy which might result from the disclosure.

S. Rep. No. 94-938, at 340 (1976). As Sen. Chuck Grassley observed of § 6103(k)(3) in the years following its passage: certain "type[s] of factual misstatements should trigger disclosure of return information" depending on the "consequences of these misstatements" and "their degree of seriousness." 127 Cong. Rec. 22,510 (1981) (statement of Sen. Grassley). The propriety of a

10

particular release "depends on the reason for the disclosure and the type of information to be disclosed." *Id.*

Under the text of § 6103(k)(3), "information" about a specific taxpayer may be released—subject to the approval of the JCT[2]—if two conditions are met. First, "a misstatement of fact [has been] published or disclosed with respect to such taxpayer's return or any transaction of the taxpayer with the Internal Revenue Service." § 6103(k)(3). Second, disclosure of the requested records is "necessary for tax administration purposes to correct" that "misstatement of fact[.]" § 6103(k)(3). Notably, "[t]he term 'tax administration' is defined broadly . . . .'" *True the Vote, Inc. v. IRS*, 831 F.3d 551, 557–58 (D.C. Cir. 2016) (citing § 6103(b)(4)), *cert. denied sub nom. True the Vote, Inc. v. Lerner*, 137 S. Ct. 1068 (2017); *see also Hobbs v. U.S. ex rel. Russell*, 209 F.3d 408, 410-11 (5th Cir. 2000) ("The courts that have considered whether certain activities qualify as 'tax administration' uniformly have defined the term broadly.").[3]

---

[2] To the extent that the JCT approval clause of § 6103(k)(3) presents a bar to any relief that EPIC seeks, the clause violates the separation of powers and must be severed from paragraph (k)(3). It is precisely the type of Congressional approval clause that the Court held unconstitutional in *Metro. Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 275–76 (1991) ("[W]hen Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." (quoting *INS v. Chadha*, 462 U.S. 919, 952–55 (1983))); *see also Bowsher v. Synar*, 478 U.S. 714, 726 (1986); *Am. Fed'n of Gov't Employees, AFL-CIO v. Pierce*, 697 F.2d 303, 304 (D.C. Cir. 1982). Further, it must be severed from the rest of (k)(3). *See* 26 U.S.C. § 7852(a) (Title 26 severability clause); *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685–86 (1987) ("[T]he inclusion of such a clause creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision."); *Marchetti v. United States*, 390 U.S. 62, 81–82 (1968) ("[I]n the Internal Revenue Code itself, Congress has specifically enacted a severability clause. . . . That clause represents a clear statutory command to this Court to wield its constitutional knife surgically, concentrating on the suspect provisions . . . rather than bludgeoning the entire taxing scheme.").

[3] Once the IRS processes a § 6103(k)(3) FOIA request and the Commissioner determines whether to seek approval from the JCT for the release of records, that exercise of discretion is also reviewable under the FOIA. *E.g.*, *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 149–

### 2. *EPIC has plausibly alleged that the requested records are releasable under § 6103(k)(3).*

"[T]reat[ing] the complaint's factual allegations as true" and granting EPIC "the benefit of all inferences that can be derived from the facts alleged," *Powell*, No. CV 16-1682 (JEB), 2017 WL 2533348, at *1 (citation omitted), EPIC has plausibly alleged that it requested records covered by § 6103(k)(3).

EPIC seeks Donald J. Trump's tax returns for tax years 2010 forward "and any other indications of financial relations with the Russian government or Russian businesses." Compl. ¶ 36–37, 41–42. As EPIC has alleged, numerous conflicting statements of fact have been published concerning President Trump's tax returns and his "transaction[s] . . . with the Internal Revenue Service." § 6103(k)(3); Compl. ¶ 17. "At least some of these statements of fact must necessarily be false because they are contradictory." Compl. ¶¶ 17, 32.

First, conflicting statements of fact have been published as to whether President Trump's returns reflect Russian sources of income. Compl. ¶ 17. The President has repeatedly stated that he receives no income from Russian sources. Compl. ¶ 18. ("For the record, I have ZERO investments in Russia."); Compl. ¶ 22 ("I HAVE NOTHING TO DO WITH RUSSIA - NO DEALS, NO LOANS, NO NOTHING!"); Compl. ¶ 22 ("I can tell you, speaking for myself, I own nothing in Russia. I have no loans in Russia. I don't have any deals in Russia."). Multiple parties, including the President's own lawyers, have contradicted the President's blanket denials.

---

50 (D.C. Cir. 1986), *aff'd*, 484 U.S. 9 (1987); ("FOIA . . . places upon the IRS the burden of sustaining its claimed exemption [under § 6103] in de novo judicial review."); *see also Long v. IRS*, 742 F.2d 1173, 1181–82 (9th Cir. 1984) ("[W]e perceive no inconsistency between FOIA's de novo standard and the seemingly absolute language of section 6103(b)(2) which appears to delegate this determination to the Secretary or his delegate. . . . Congress made no provision in FOIA for a lower standard of review in such cases; instead, review was expressly made de novo under all the exemptions in subsection (b).").

In a recent published letter, President Trump's attorneys identified several distinct sources of

Russian income reflected in his returns:

> With a few exceptions—as detailed below—your tax returns do not reflect (1) any
> income of any type from Russian sources . . . . The exceptions are: (1) in 2013,
> the Miss Universe pageant was held in Moscow, and of the $12.2 million of
> foreign income that it earned that year, a substantial portion of it was attributable
> to the Moscow event . . .; and (3) over the years, it is likely that TTO or third-
> party entities engaged in ordinary course sales of goods or services to Russians or
> Russian entities . . . that could have produced income attributable to Russian
> sources . . . .

Letter from Sheri A. Dillon & William F. Nelson, Tax Partners, Morgan Lewis & Bockius LLP,

to President Donald J. Trump (Mar. 8, 2017).[4] Moreover, the Trump Organization sought

extensions for a series of trademarks that were set to expire in 2016 from Rospatent, the Russian

government agency in charge of intellectual property. "In a series of approvals starting in April

2016 and ending in December, Rospatent granted new 10-year terms for the trademarks, the

agency's records show." Mike McIntire, *Russia Renewed Unused Trump Trademarks in 2016*,

N.Y. Times (June 18, 2017).[5] Other public figures and news organizations have disputed

President Trump's claims, including former Democratic presidential nominee Hillary Clinton,

Sen. Chris Murphy, *The New York Times*, *The Washington Post*, and *CBS News*. Compl. ¶¶ 19–

21, 24–25.

    Second, conflicting statements of fact have been published concerning the IRS's audits of

President Trump. The President has alleged that the IRS unfairly targets him on religious and

political grounds:

> President Trump has claimed that he 'unfairly get[s] audited by the I.R.S. almost
> every single year' and has accused the agency of targeting him for both religious
> and political reasons. In a February 2016 CNN interview, Trump stated: "I'm
> always audited by the IRS, which I think is very unfair—I don't know, maybe
> because of religion, maybe because of something else." Trump added that the IRS

---

[4] http://www.wsj.com/public/resources/documents/TrumpTaxRussiaLetter2017.pdf.
[5] https://www.nytimes.com/2017/06/18/us/politics/russia-trump-trademarks.html.

may target him "because of the fact that I'm a strong Christian, and I feel strongly about it and maybe there's a bias."

Compl. ¶ 28. IRS Commissioner John Koskinen has expressly denied this allegation. In a response to a reporter's question about President Trump's claims, Koskinen stated:

> That's something that would never cause you to be audited. I've tried to make clear, certainly since I've been commissioner, that we don't care who you are, who you voted for, what party you belong to, whether you go to church or don't go to church. If you hear from us in response to an inquiry, it is about something in your tax return. . . . But it would never be the case that you'd be audited because of any religious persuasion you might happen to have.

*Newsmakers with John Koskinen*, C-SPAN (Feb. 26, 2016).[6] One commentator even wrote that President Trump eludes IRS auditors at a higher rate than non-wealthy taxpayers. Compl. ¶ 29.

EPIC has also sufficiently alleged that disclosure of the requested records is "necessary for tax administration purposes to correct" these "misstatement[s] of fact[.]" § 6103(k)(3). The misstatements of fact identified in the Complaint, which pertain to documents and transactions that are currently nonpublic, can only be disproven by disclosure of President Trump's tax records. Compl. ¶ 10. Further, it is necessary for "tax administration purposes" that the IRS make such a disclosure, § 6103(k)(3), because the integrity and fairness of the IRS is under attack. Compl. ¶ 31. The agency's administration of the tax code with respect to President Trump has been prominently condemned for "religious discrimination, political bias, and economic favoritism . . . ." Compl. ¶ 27. Significant numbers of taxpayers "have announced their intention to 'withhold[] payment until Trump releases his own tax returns, since they believe the documents would prove that he's not fit to be president.'" Compl. ¶ 30; *see also* Inspector General for Tax Admin., U.S. Treasury Dep't, *Interim Results of the 2017 Filing Season* 6 (Mar. 31, 2017)[7] (showing an 8.48 percent year-over-year decline in tax returns received by the IRS

---

[6] https://www.c-span.org/video/?405379-1/newsmakers-john-koskinen.
[7] https://www.treasury.gov/tigta/auditreports/2017reports/201740028fr.pdf.

between 2016 and 2017). Absent disclosure of the requested records, the IRS will be unable to restore public confidence in the agency's equitable administration of the tax code or to prevent tax protestors from refusing to pay their taxes.

These facts are consistent with other instances in which the IRS has pursued § 6013(k)(3) disclosure to correct misstatement of facts—cases which attracted far less public attention than President Trump's tax records. In 1997, the IRS Commissioner "requested the opportunity to explore with Chairman Archer and Chairman Roth the possibility of using Code section 6103(k)(3) to permit the IRS to correct misstatements of fact regarding examinations of tax-exempt organizations." Joint Comm. on Taxation, *Report of Investigation of Allegations Relating to Internal Revenue Service Handling of Tax-Exempt Organization Matters*, JCS No. 3-00, at 1 (2000). The Commissioner explained that these "unfounded reports erode[d] public confidence in the integrity of the IRS, thereby undermining the self-assessment compliance system." Letter from Margaret Milner Richardson, Comm'r, Internal Revenue Serv., to William V. Roth, Jr., Chairman, S. Comm. on Fin. (Feb. 25, 1997).

And in 1981, the IRS Commissioner pursued a § 6103(k)(3) disclosure to correct misstatements by tax protestors that the IRS was "letting them get away with not filing or that [the IRS was] harassing them." IRS, *Commissioner Egger's Remarks on Abusive Tax Shelters* (Oct. 6, 1981), 1981 WL 176410, at *3; *see also IRS Response to the Illegal Tax Protester Movement: Hearing Before the Commerce, Consumer and Monetary Affairs Subcomm. of the H. Comm. on Gov't Operations*, 97th Cong. 106 (1981) (statement of Roscoe L. Egger, Jr.) ("[W]e think it is essential, despite the cost and effort, to enforce the laws violated by these individuals, and to demonstrate to the public that these tactics should not be attempted by others.").

In sum, the EPIC Complaint provides sufficient facts to plausibly allege that President

Trump's tax records fall under § 6103(k)(3).

### 3. EPIC perfected its request and exhausted its administrative remedies.

Because EPIC requested records releasable under § 6103(k)(3)—a provision that

"pertain[s] to disclosure" of taxpayer records "to the public at large," *Church of Scientology of*

*Cal.*, 792 F.2d at 149—EPIC was under no obligation to provide a written authorization from

President Trump. Section 6103(k)(3) neither imposes nor authorizes such a requirement. EPIC's

request was thus perfected upon submission, and EPIC's administrative remedies were properly

exhausted as soon as the IRS denied EPIC's request and appeal. Compl. ¶¶ 39–40, 45–49.

Despite this, the IRS contends that EPIC was bound to provide a written taxpayer

authorization under 26 C.F.R. § 601.702(c)(5)(iii)(C) and that the Complaint should be dismissed

for failure to exhaust administrative remedies. IRS Mem. 7–11. These arguments fail for four

reasons.

First, even if § 601.702(c)(5)(iii)(C) were read to apply to § 6103(k)(3) FOIA requests,

the IRS misinterprets its own regulation. The regulation states in relevant part:

> In the case of an attorney-in-fact, or other person requesting records on behalf of
> or pertaining to other persons, the requester shall furnish a properly executed
> power of attorney, Privacy Act consent, or tax information authorization, <u>as
> appropriate</u>.

§ 601.702(c)(5)(iii)(C) (emphasis added). Demanding a written authorization is <u>not</u> appropriate

where, as here, the statute does not require the taxpayer's consent. *See* § 6103(k)(3). As the D.C.

Circuit has explained, a requirement that a person "shall" do something "as appropriate" means

"<u>only to the extent appropriate</u>." *Consumer Fed'n of Am. & Pub. Citizen v. HHS*, 83 F.3d 1497,

1503 (D.C. Cir. 1996) (emphasis added). "To conclude otherwise," as the IRS does here, "would

violate a basic canon of . . . construction by treating the two words ['as appropriate'] as

surplusage." *Id.*; *see also Gardebring v. Jenkins*, 485 U.S. 415, 426–27 (1988) (holding that regulation which required information to be delivered in "written form, and orally as appropriate" meant only "that such information <u>may</u> be transmitted orally" (emphasis added)). Thus even if § 601.702(c)(5)(iii)(C) were to apply in this case, it was not "appropriate"—and thus not required—for EPIC to provide a written taxpayer authorization.

Second, if the IRS regulations, including § 601.702(c)(5)(iii)(C), did require a requester to provide taxpayer authorization for a § 6101(k)(3) FOIA request, the regulation would directly conflict with the statute and thus be unlawful as applied to EPIC's request. The text, legislative history, and past agency applications of § 6103(k)(3) reveal that the statute does not require—or even anticipate—taxpayer consent to the release of records under (k)(3). *See supra* Parts I.B.1, I.B.2. Notably, one of the contemplated uses of § 6103(k)(3) is to "protect . . . the tax system against unwarranted public attacks" by the taxpayer herself. *Confidentiality of Tax Return Information: Hearing Before the H. Comm. on Ways and Means*, 94th Cong. 23 (1976) (statement of Donald C. Alexander, Commissioner of Internal Revenue). That is precisely the situation that prompted the IRS to pursue a § 6103(k)(3) disclosure of tax protestor records in 1981. IRS, *Commissioner Egger's Remarks on Abusive Tax Shelters* (Oct. 6, 1981), 1981 WL 176410. For the IRS to demand a taxpayer authorization with a § 6103(k)(3) FOIA request is thus an "[im]permissible construction of the statute." *Tax Analysts v. IRS*, 350 F.3d 100, 103 (D.C. Cir. 2003) (quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984)).

Third, even if the Court did find that EPIC failed to exhaust administrative remedies, such failure would not preclude judicial review where—as here—the "action presents no risk of undermining the purposes and policies underlying the exhaustion requirement, namely, to prevent premature interference with agency processes, to give the parties and the courts benefit

of the agency's experience and expertise and to compile an adequate record for review." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Like the plaintiff in *Wilbur*, EPIC "did not bypass the administrative review process but pursued it to its end[.]" *Wilbur*, 355 F.3d at 677 (D.C. Cir. 2004). EPIC filed both (1) an Original FOIA Request and (2) a Renewed FOIA Request and Appeal explaining the legal basis for the release of the requested records. Compl. ¶¶ 36–38, 41–44. After refusing to issue a determination on both requests, the IRS stated to EPIC that "any future requests regarding this subject matter w[ould] not be processed." Compl. ¶ 49. Like the agency in *Wilbur*, the IRS also represented that records were unavailable to EPIC under the applicable provision. Compl. ¶ 46; IRS Final Response 1 ("IRC § 6103(k)(3) does not afford any rights to requesters under the FOIA to the disclosure of tax returns or return information of third parties."). And, like the agency in *Wilbur*, the IRS represented to EPIC that it had the "right to seek judicial review." *Wilbur*, 355 F.3d at 677 (D.C. Cir. 2004); Davisson Decl. ¶ 8. The agency has thus conceded that this case is ripe for review.

Finally, as this Court recently noted, dismissal for failure to exhaust administrative remedies can be "premature" at such an "early stage" of FOIA litigation. *Powell*, No. CV 16-1682 (JEB), 2017 WL 2533348, at *10. Because EPIC credibly alleges that it filed "the necessary documents" to perfect its request, and because the IRS has not shown that EPIC "clearly failed to make a valid request for the[] records," dismissal of EPIC's FOIA claims would be inappropriate in any event. *Id.*

The IRS's perfection and exhaustion arguments therefore fail, and this case is properly before the Court.

### 4. EPIC has plausibly stated each of its FOIA claims.

Because EPIC perfected its request, EPIC was entitled to processing. By refusing to process EPIC's request, the IRS violated the FOIA in three respects. EPIC has plausibly alleged facts necessary to prove each violation and that EPIC is entitled to relief in each instance.

First, the IRS failed to comply with statutory deadlines (Count I). EPIC filed a perfected FOIA request for President Trump's tax records. *See supra* Part I.B.3; Compl. ¶¶ 36–38, 41–44. The IRS failed to issue a determination on that request within the prescribed period. § 552(a)(6)(A)(i); Compl. ¶¶ 39–40, 45–49, 55. As relief, EPIC is entitled to a determination on its request. § 552(a)(6)(A)(i); Compl. ¶ 57; Compl. p. 14 ("Requested Relief").

Second, the IRS failed to take reasonable steps to release all responsive information (Count II). EPIC filed a perfected FOIA request for President Trump's tax records. *See supra* Part I.B.3; Compl. ¶¶ 36–38, 41–44. The IRS failed to take any "reasonable steps necessary to . . . release [the] nonexempt information" that EPIC requested. § 552(a)(8)(A)(ii)(II); Compl. ¶¶ 39–40, 45–49, 59; IRS Mem. 11. As relief, EPIC is entitled to full processing of its request, to the identification of nonexempt responsive documents, to an IRS request to the JCT to approve the release of those documents, and to any other "reasonable steps" necessary for release. § 552(a)(8)(A)(ii)(II); Compl. ¶ 61; Compl. p. 14 ("Requested Relief"); *see also Citizens for Responsibility & Ethics in Washington (CREW) v. DOJ*, 846 F.3d 1235, 1242 (D.C. Cir. 2017) ("This circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief.").

Finally, the IRS is unlawfully withholding agency records (Count III). EPIC filed a perfected FOIA request for President Trump's tax records. *See supra* Part I.B.3; Compl. ¶¶ 36–38, 41–44. The IRS has failed to disclose nonexempt agency records responsive to that request. §

552(a)(3)(A); Compl. ¶¶ 39–40, 45–49, 63. The IRS's failure to comply with statutory deadlines and failure to take reasonable steps towards disclosure renders that withholding unlawful. § 552(a)(6)(A)(i); § 552(a)(8)(A)(ii)(II). As relief, EPIC is entitled to release of nonexempt responsive documents (subject to the approval of the JCT) and any other relief necessary to cure the IRS's unlawful withholding of records. § 552(a)(3)(A); § 6103(k)(3); Compl. ¶ 65; Compl. p. 14 ("Requested Relief").

Because EPIC has plausibly alleged violations of the FOIA entitling EPIC to relief, the IRS's motion to dismiss should be denied as to Counts I-III.

## II. EPIC HAS STANDING TO ASSERT APA CLAIMS BECAUSE IT SUFFERED AN INFORMATIONAL INJURY.

EPIC has standing to assert its APA claims because EPIC properly alleged that it suffered an informational injury. An informational injury occurs when a plaintiff is denied information that is due to the plaintiff under a valid statue. *FEC v. Akins*, 524 U.S. 11, 21 (1998). For the purposes of standing:

> A plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.

*Friends of Animals v. Jewell*, 828 F.3d 989, 992, (D.C. Cir. 2016). "Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances—why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose—are irrelevant to his standing." *Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006). Further, the denial of "timely access" to requested information constitutes an "informational injury" for which the government can "make no serious challenge to the injury and causation elements . . . of standing." *Byrd v. EPA*, 174 F.3d

239, 243 (D.C. Cir. 1999); *Am. Historical Ass'n v. NARA*, 310 F. Supp. 2d 216, 228 (D.D.C. 2004) ("It is clear, then, that Plaintiffs' past delays in access to presidential records satisfy the injury in fact requirement of the standing analysis.").

EPIC has alleged that it was "deprived of information that . . . a statute requires the government . . . to disclose to it." *Friends of Animals*, 828 F.3d at 992. EPIC states in the Complaint (1) that the IRS's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A) and short of statutory right under 5 U.S.C. § 706(2)(C)" and (2) that the IRS unlawfully "failed to seek permission from the Joint Commission on Taxation to release the records EPIC has requested." Compl. ¶¶ 67, 72. As a result of these APA violations, EPIC was denied what was owed by statute: non-arbitrary action on its records request and timely access to the requested records. §§ 706(1), (2); §§ 552(a)(3)(A), (6)(A)(i); § 6103(k)(3); Compl. ¶¶ 69, 74. Further, the harm EPIC alleged is one that "Congress sought to prevent"—namely, arbitrary denial of access to tax records that Congress has deemed "public as a matter of policy" or where the public interest in disclosure "outweigh[s] any possible invasion of the taxpayer's privacy which might result . . . ." S. Rep. No. 94-938, at 340 (1976) (explaining § 6103(k)(3) and other disclosure provisions of § 6103(k)); *see* §§ 706(1), (2). EPIC has therefore alleged a cognizable informational injury. *See Friends of Animals*, 828 F.3d at 992; *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1095 (D.C. Cir. 2015) ("denial of access to bird-related [Animal Welfare Act] information" was a "cognizable injury sufficient to support standing" for APA claim); *Am. Historical Ass'n v. NARA*, 516 F. Supp. 2d 90, 107 (D.D.C. 2007) ("Accordingly, the Court concludes that Plaintiffs have standing to pursue their claim that the delay [in obtaining access to records] . . . violates the APA.").

Further, EPIC is in the zone of interests of § 6103(k)(3). In enacting § 6103(k)(3), Congress intended that covered records should be public "as a matter of policy" or when the public interest in disclosure "outweighed any possible invasion of the taxpayer's privacy which might result . . . ." S. Rep. No. 94-938, at 340 (1976); *see also Church of Scientology of Cal.*, 792 F.2d at 149 (noting that § 6103(k)(3) permits the disclosure of taxpayer records "to the public at large" rather than "specified private individuals . . . or government officials"). Thus, EPIC and other members of the public clearly fall within the statute's zone of interests. *See Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 57 (D.C. Cir. 1983) (finding that plaintiffs in an APA suit "[met] the 'zone of interests' test for standing" because the agency's alleged violations of a public records statute had obstructed "the public's expected access to records").

Congress also intended there to be judicial review when the IRS exercises discretion under § 6103 to withhold or disclose documents. *Church of Scientology of Cal.*, 792 F.2d at 149–50 ("FOIA . . . places upon the IRS the burden of sustaining its claimed exemption [under § 6103] in de novo judicial review."); *see also Long*, 742 F.2d at 1181–82 ("[W]e perceive no inconsistency between FOIA's de novo standard and the seemingly absolute language of section 6103(b)(2) which appears to delegate this determination to the Secretary or his delegate."); *Aronson v. IRS*, 973 F.2d 962, 967 (1st Cir. 1992) (quoting § 706(2)(A)) ("[T]he IRS, in deciding whether or not to disclose, may not act in a manner that is 'arbitrary, capricious, [or] an abuse of discretion.'"). EPIC thus has standing to bring its APA claims.

## III.    THE IRS VIOLATED THE APA BY REFUSING TO PROCESS EPIC'S RECORDS REQUEST.

"[T]reat[ing] the complaint's factual allegations as true" and granting EPIC "the benefit of all inferences that can be derived from the facts alleged," *Powell*, No. CV 16-1682 (JEB), 2017 WL 2533348, at *1, EPIC has plausibly alleged two violations of the APA. First, the IRS's

22

closure of EPIC's records request was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under § 706(2)(A), and "short of statutory right" under § 706(2)(C) (Count IV). Second, by refusing to seek disclosure approval from the JCT to release President Trump's tax records, the IRS "unlawfully withheld or unreasonably delayed" action in violation of 5 U.S.C. § 706(1) (Count V).

### A.  Judicial review is available under the APA.

In moving simultaneously to dismiss EPIC's FOIA claims and EPIC's APA claims, the IRS attempts to have its cake and eat it too. *Compare* IRS Mem. 3 ("FOIA provides an adequate remedy in this case"), *with* IRS Mem. 2 ("EPIC's FOIA claims fail").  The Court must reject this logic, which is contrary to both the statutory scheme and the D.C. Circuit's recent decision in *CREW*. If the FOIA does not provide a remedy, then the APA must. EPIC has plausibly alleged an APA claim based on the IRS's unlawfully refusal to consider EPIC's records request. *See generally* Compl.

The D.C. Circuit in *CREW* held that relief is unavailable under the APA wherever the FOIA provides an "adequate remedy," *CREW*, 846 F.3d at 1235, but the same does not hold where FOIA provides *inadequate* remedies (or none at all). Here, the IRS argues that FOIA does not provide a remedy because EPIC did not obtain a written taxpayer authorization. *See supra* Parts I.C.1, 4; § 601.702(c)(5)(iii)(C). As noted, this argument is baseless. *See supra* Parts I.C.1, 4. But, if the IRS is permitted to evade judicial review under the FOIA, then the APA must provide a mechanism to review the agency's handling of § 6103(k)(3) requests. *See Pohl v. EPA*, No. CIV. A. 09-1480, 2012 WL 762083, at *9 (W.D. Pa. Mar. 7, 2012) (noting that "the Government Defendants' motion to dismiss the APA claim in Count II [had been] denied" because "FOIA could not provide an adequate remedy"); *Roberts v. IRS*, No. 8:13-CV-1731-T-

33TBM, 2014 WL 1724383, at *4 (M.D. Fla. Mar. 17, 2014) ("Plaintiffs request separate

findings pursuant to the APA, specifically, that the agency action was arbitrary and capricious. . .

. At this juncture . . . the Court finds that Plaintiffs' FOIA and APA claims are sufficiently

distinct and non-duplicative."). A contrary holding would enable the agency to evade judicial

review under both the FOIA and the APA by "forc[ing] resort to an arid ritual of meaningless

form." *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958).

Moreover, though courts possess "wide latitude . . . to fashion remedies under FOIA,"

*CREW*, 846 F.3d at 1242, APA relief must remain available to the extent that any of EPIC's

requested remedies might fall outside of the Court's FOIA authority. For example, should this

Court grant EPIC preliminary relief and order the IRS to process EPIC's records request, the

agency will need to decide whether to seek § 6103(k)(3) disclosure approval from the JCT. Such

an exercise of IRS discretion is reviewable under both the FOIA, *see supra* Part I.B.1, and the

APA. § 706(2)(A); *see also Aronson*, 973 F.2d at 967. If it later turns out that an appropriate

remedy is available to EPIC under the APA but not the FOIA, dismissal of EPIC's APA claims

now will result in unfair prejudice to EPIC. Thus, it would be "premature" to dismiss EPIC's

claims at this "early stage" of litigation. *Powell*, No. CV 16-1682 (JEB), 2017 WL 2533348, at

*10; *see also Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 44

(D.D.C. 2002) (holding, on a motion to dismiss a combined FOIA and APA suit, that it would be

"premature and inappropriate to determine whether the [requested relief] will or will not issue").

**B.   EPIC has plausibly alleged that the IRS unlawfully closed EPIC's records request (Count IV).**

EPIC has sufficiently stated a claim that the IRS's closure of EPIC's records request was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(a), and "short of statutory right," § 706(2)(c). Compl. ¶ 67.

An agency action challenged under the APA "must be set aside" if it is "arbitrary [and] capricious." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414 (1971). Such an action will only survive arbitrary and capricious review if it is "the product of reasoned decisionmaking." *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 785 F.3d 740, 753 (D.C. Cir. 2015). Although this standard of review is "fundamentally deferential," *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012), the court must "insist that an agency ' . . . articulate a satisfactory explanation for its action.'" *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). This entails a "thorough, probing, in-depth review of the agency's asserted basis for decision, ensuring that the agency . . . [has] articulate[d] a satisfactory explanation for its action . . . ." *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1498 (D.C. Cir. 1988) (quoting *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43) (internal quotation marks omitted).

As alleged, EPIC filed a perfected records request for President Trump's tax records. *See supra* Part I.B.3; Compl. ¶¶ 36–38, 41–44. EPIC was entitled to a determination "within 20 days"; "reasonable steps necessary to . . . release nonexempt information"; and "prompt[]" release of all nonexempt records (subject to the approval of the JCT). § 552(a); § 6103(k)(3). The IRS closed EPIC's request, claiming that it was "incomplete." ¶¶ 39–40, 47–49. The IRS's only asserted reason for closing EPIC's request—incompleteness—was not a lawful one. *See supra*

Part I.B.3; ¶ 67. As a consequence, the IRS failed to show that its action was lawful or "the product of reasoned decisionmaking." *U.S. Postal Serv.*, 785 F.3d at 753.

The purported "sparse[ness]" of EPIC's allegations, IRS Mem. 17, is simply a reflection of the IRS's failure to advance *any* valid justification requiring a response. An agency action supported with no lawful explanation "is the epitome of arbitrary and capricious decisionmaking." *Columbia Gas Transmission Corp. v. FERC*, 448 F.3d 382, 387 (D.C. Cir. 2006) (internal quotation marks omitted). Notably, the IRS is bound by whatever reasons it put forward at the time it closed EPIC's request, as "courts may not accept . . . post hoc rationalizations for agency action." *Great Lakes Comnet, Inc. v. FEC*, 823 F.3d 998, 1004 (D.C. Cir. 2016) (quoting *Ass'n of Civilian Technicians v. Federal Labor Relations Authority*, 269 F.3d 1112, 1117 (D.C. Cir. 2001)).

The IRS's closure of EPIC's request was therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under § 706(2)(a), and "short of statutory right" under § 706(2)(c). As relief, EPIC is entitled to full processing of its request, to the identification of nonexempt responsive documents, and ultimately to the release of such records (subject to the approval of the JCT). § 552(a); § 6103(k)(3); Compl. p. 14 ("Requested Relief"). The IRS's motion to dismiss should be denied as to Count IV.

### C. EPIC has plausibly alleged that the IRS failed to seek permission from the Joint Committee on Taxation to release the requested records (Count V).

EPIC has adequately alleged that the IRS's refusal to seek disclosure approval from the JCT is "agency action unlawfully withheld or unreasonably delayed" in violation of § 706(1). Compl. ¶ 73.

The plain language of § 552(a)(8)(A)(ii)(II) requires the IRS to take "reasonable steps necessary to . . . release nonexempt information" responsive to a records request. This provision

sets out a "discrete agency action that [the IRS] is required to take," PETA, 797 F.3d at 1098

(emphasis removed) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004)). It is

exactly the type of "specific, unequivocal command" that permits judicial review of agency

inaction under § 706(1). *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir.

2016) (citing *Norton*, 542 U.S. at 63–64). Those "reasonable steps" include seeking approval

from the Joint Commission on Taxation where—as here—the requested records satisfy the

requirements of § 6103(k)(3). *See supra* Part I.B.2.

      As alleged, EPIC filed a perfected records request for President Trump's tax records. *See*

*supra* Part I.B.3; Compl. ¶¶ 36–38, 41–44. EPIC requested records which fall under §

6103(k)(3). Pt. I.B.2. The IRS closed EPIC's request, claiming that it was "incomplete." ¶¶ 39–

40, 47–49. The IRS "failed to seek permission from the Joint Commission on Taxation to release

the records EPIC has requested" and stated that it would take "no further action" on EPIC's

request. Compl. ¶¶ 40, 49, 72. Thus, the IRS failed to take the "reasonable steps" expressly

required of it. § 706(1); § 6103(k)(3).

      Although § 6103(k)(3) states that the Secretary "may" disclose certain records rather than

"must," he (or his designee) is required to exercise that power consistent with the APA's

prohibition on "abuse of discretion." § 706(2)(a); *Aronson*, 973 F.2d at 967. Abuse of discretion

occurs when an agency "fails to provide adequate explanation" for its discretionary action,

*Blanca Tel. Co. v. FCC*, 743 F.3d 860, 864 (D.C. Cir. 2014) (quoting *Morris Commc'ns Inc. v.*

*FCC*, 566 F.3d 184, 188 (D.C. Cir. 2009)), or when the agency's "decision is based on an

improper understanding of the law." *Pappas v. FCC*, 807 F.2d 1019, 1023 (D.C. Cir. 1986)

(quoting *Jaimez-Revolla v. Bell*, 598 F.2d 243, 246 (D.C. Cir. 1979)). EPIC has alleged facts

which plainly demonstrate abuse of the Commissioner's discretion. The IRS's only asserted

reason for refusing further action—the alleged incompleteness of EPIC's request—was "based on an improper understanding of the law." *Id.*; *see supra* Part I.B.3; ¶ 67. The agency offered no other explanation beyond this, let alone an "adequate" one. *Blanca Tel. Co.*, 743 F.3d at 864. The IRS cannot hide behind an abuse of the discretion granted in one statute, § 6103(k)(3), to excuse its failure to carry out "specific, unequivocal command[s]" in others. *Anglers Conservation Network*, 809 F.3d at 670 (citing *Norton*, 542 U.S. at 63–64); § 552(a)(8)(A)(ii)(II); § 706(2)(a).

Thus, the IRS "unlawfully withheld or unreasonably delayed" a non-abusive exercise of its power to seek JCT disclosure approval. § 706(1), (2)(a); § 6103(k)(3). As relief, EPIC is entitled to have the IRS to seek such approval. § 706(1); § 552(a)(8)(A)(ii)(II); Compl. p. 14 ("Requested Relief"). The IRS's motion to dismiss should be denied as to Count V.

## CONCLUSION

For the above reasons, the Court should deny the IRS's motion to dismiss Counts I through V of the Complaint. The Court should order the agency to promptly identify all responsive, nonexempt records and take all reasonable steps necessary to secure their release.

Respectfully Submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President and Executive Director

/s/ Alan Butler
Alan Butler, D.C. Bar # 1012128
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
Dated: June 26, 2017                                    (202) 483-1248 (facsimile)