IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | Case No. 1:17-cv-00670-JEB |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| INTERNAL REVENUE SERVICE, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**INTERNAL REVENUE SERVICE'S REPLY
IN SUPPORT OF MOTION TO DISMISS**

EPIC's complaint seeks to compel the Internal Revenue Service ("IRS") to provide

President Trump's tax returns to EPIC through the FOIA, 5 U.S.C. § 552, or the APA, 5 U.S.C.

§ 701, *et seq*. without first obtaining the taxpayer's consent, as required by law. EPIC's

complaint fails, however, because to obtain access under the FOIA, EPIC must obtain the

taxpayer's consent. 26 U.S.C. § 6103 strictly limits the disclosure of tax returns and return

information. The only avenue to obtain third-party tax returns or return information under the

FOIA is to comply with 26 U.S.C. § 6103(c) and 26 C.F.R. § 601.702(c)(5)(iii)(C) by submitting

the proper authorization showing that it has received the taxpayer's consent. EPIC admittedly has

not followed these procedures. Accordingly, EPIC's FOIA claims must fail.

EPIC attempts to overcome its failure to obtain the taxpayer's consent to access the tax

returns by claiming that it may compel disclosure under authority granted to the Secretary[1] and

_____

[1] When the Internal Revenue Code specifies the "Secretary", as it does in § 6103(k)(3), the term
includes the "Secretary of the Treasury or his delegate."  26 U.S.C. § 7701(a)(11)(B). The term
"or his delegate" "when used with reference to the Secretary of the Treasury, means any officer,
employee, or agency of the Treasury Department duly authorized by the Secretary of the

the Congressional Joint Committee on Taxation in 26 U.S.C. § 6103(k)(3). That provision

provides the Secretary with discretion to disclose the tax return information of a third-party

taxpayer, after receiving the approval of the Congressional Joint Committee on Taxation, under

certain conditions. Despite the plain language of section 6103(k)(3), EPIC claims the Court may

*force* the Secretary to take that action.

EPIC claims the Court's authority to force disclosure of a third party's tax return absent

consent is found either in the FOIA or the APA. But EPIC misconstrues both statutes. EPIC

admittedly failed to comply with 26 U.S.C. § 6103(c) and 26 C.F.R. § 601.702(c)(5)(iii)(C) by

not providing the required consent for release of the requested tax returns. As a consequence, it

failed to perfect its request and no records were improperly withheld. The FOIA authorizes a

court to order an agency to disclose records that it improperly withheld. But tax returns and

return information requested by a third party are not improperly withheld if the FOIA request

does not have the taxpayer's consent. 26 U.S.C. § 6103; *see also* 5 U.S.C. § 552(b)(3); *Lehrfeld*

*v. Richardson*, 132 F.3d 1463, 1466 (D.C. Cir. 1998) (quoting the *Tax Analysts* decision, the

*Lehrfeld* Court stated, "[T]hrough § 6103, Congress charged these two agencies and their

employees with the duty of protecting return information from disclosure to others within the

federal government, and to the public at large."); *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C.

Cir. 1997) (Section "6103 is a statute specifically exempting certain matters from disclosure to

the general public and leaving the IRS with no discretion to reveal those matters publicly.")

EPIC's attempts to use the APA to obtain the third party tax returns similarly fail. The

APA authorizes a court to direct agency action under certain conditions, but does not authorize a

---

Treasury directly, or indirectly by one or more redelegations of authority, to perform the function
mentioned or described in the context…" 26 U.S.C. § 7701(12)(A)(i).

court to direct actions within an agency's discretion. EPIC cannot use the APA to compel the Secretary or his delegate to determine that a misstatement of fact has been made and that it is necessary for tax administration to disclose return information in response. Nor can EPIC use the APA to compel the Secretary or his delegate to request that the Joint Committee on Taxation approve the release of third-party return information. And, of course, the APA would not apply in any way to the Joint Committee on Taxation's necessary approval. 5 U.S.C. § 551(1)(A). In any event, the APA does not apply when, as here, another statute such as the FOIA provides an adequate remedy, even if EPIC's failure to obtain consent means that it is not entitled to relief under the FOIA. In this case, the FOIA provides a procedure for obtaining the exact relief EPIC seeks: EPIC **may** obtain the requested third-party tax returns under FOIA if and when it obtains the necessary consent from the third party.[2]

Moreover, EPIC lacks standing to pursue its APA claims, as it has not demonstrated an informational injury under any particular statute and it has not demonstrated that a favorable decision would "likely" redress its injury. Finally, the Court should dismiss EPIC's complaint because it fails to state a claim upon which relief can be granted, as the IRS properly closed the FOIA request and the FOIA does not turn an otherwise discretionary act into a mandatory act.

## I.   26 U.S.C. § 6103(C) AND 26 C.F.R. 601.702(C)(5)(III)(C) PRESCRIBE THE PROCEDURE FOR A MEMBER OF THE PUBLIC TO ACCESS THIRD-PARTY TAX RETURNS UNDER THE FOIA.

As we explained in our opening brief, FOIA permits access to records unless the records sought are otherwise exempt from disclosure. Tax returns and return information are exempt

---

[2] Even if EPIC overcame the procedural hurdles in its path, allowing IRS to process, the First and Second Records Requests substantively, disclosure of the records might still be barred if the Secretary determined that disclosing the tax returns would seriously impair Federal tax administration. *See* 26 U.S.C. § 6103(c). "[R]eturn information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration."

unless the requestor demonstrates that the disclosure is not prohibited by 26 U.S.C. § 6103. The structure and purpose of 26 U.S.C. § 6103 demonstrate that EPIC may obtain third-party tax returns only when it obtains the taxpayer's consent. Section 6103(a) provides broad protection for tax returns and tax return information. The general rule under section 6103(a) is that the IRS may not disclose tax returns and return information. Violators of this statute can expect severe consequences, to include imprisonment and fines, and damages are available against the United States. *See* 26 U.S.C. § 7213(a); 26 U.S.C. § 7431.

Subsections (c) through (o) of section 6103 provide limited exceptions to the general prohibition against public disclosure of tax returns. Only one subsection, 6103(c), prescribes the procedure for obtaining tax returns of a third party by a member of the public (in which the requestor does not have a material interest).[3] Specifically, the requestor must submit a valid, written authorization from the taxpayer whose returns he seeks, authorizing the release of the returns to him. 26 U.S.C. § 6103(c). Without this consent, a requestor has not perfected his FOIA request and has not exhausted his administrative remedies. *Hull v. Internal Revenue Service,* 656 F.3d 1174, 1192-93 & n.10 (10th Cir. 2011); *Kalu v. Internal Revenue Service*, No. 14-998 2015 WL 4077756, at *6 (D.D.C. July 1, 2015) (Boasberg, J.); *Dale v. Internal Revenue Service,* 238 F.Supp.2d 99, 102-103 (D.D.C. 2002).

EPIC does not claim that it submitted the proper written authorization with its First and Second Records Requests. (*See Opp'n*, generally). EPIC instead contends that it was not required

---

[3] When a requestor has a "material interest" in a taxpayer, such as a partner in a partnership, the requestor may obtain returns of that taxpayer upon a sufficient showing of a material interest. 26 U.S.C. § 6103(e). Here, EPIC does not claim that it can obtain the returns it seeks under subsection (e). Other provisions allow for the disclosure of return information for specific purposes, such as to law enforcement, to state taxation authorities, and to Congress.

to submit the authorization required by section 6103(c) and 26 C.F.R. § 601.702(c)(5)(iii)(C) because it requested the records under section 6103(k)(3). Section 6103(k)(3) gives the Secretary discretion to determine that it is necessary for tax administration to disclose return information to correct a misstatement of fact regarding a taxpayer's return or dealings with the IRS. (*Opp'n* at 7).[4] As explained below, subsection (k)(3) does not provide a private right of action to obtain third party return information. Nor does section 6103(k)(3) allow a requestor to force the Secretary of the Treasury to seek permission from the Joint Committee on Taxation or to side-step the requirements of section 6103(c).

---

[4] EPIC contends that 26 C.F.R. § 601.702(c)(5)(iii)(C) (which requires written authorization from a taxpayer to disclose his or her returns to a third party) does not apply in this instance because the regulation states that, "the requester shall furnish a properly executed power of attorney, Privacy Act consent, or tax information authorization, *as appropriate*." EPIC argues in circular fashion that demanding a written authorization is not appropriate where the statute does not require a taxpayer's consent to release tax information. It asserts that, in this instance, "as appropriate" means "only to the extent appropriate," and that, because the Treasury regulation requiring a written authorization to release third-party tax return information does not apply to the EPIC's request, the words "as appropriate" are "surplusage." (*Opp'n* at 16). But EPIC ignores the plain meaning of the clause: a requester must furnish one of three types of authorizations to receive third-party tax return information depending on the request submitted, *i.e.,* whichever authorization is "appropriate" to the circumstances. For example, an attorney seeking information for a client may submit a power of attorney rather than a consent to release tax information.

Section 6103(k) authorizes certain disclosures for purposes of tax administration.[5]

Subsection (k)(3) allows the Secretary[6] to release tax information after determining, in his

discretion, that such a release to correct a published or disclosed misstatement of fact is

necessary for tax administration, and, then, only after seeking and obtaining the approval of the

Congressional Joint Committee on Taxation. Section 6103(c) is designed for third parties to

obtain a taxpayer's returns and return information. In contrast, nothing in section 6103(k)(3)

suggests that a private party can use the FOIA to make an end-run around the clear protections

provided by section 6103(c) and required by the FOIA by virtue of 5 U.S.C. § 552(a) and the

implementing Treasury regulations.  Similarly, nothing in section 6103(k)(3) suggests that a

private party can *require* the Secretary to make specific determinations in order to seek the

permission of the Joint Committee on Taxation to disclose information about a specific taxpayer.

"'[T]he starting point for interpreting a statute is the language of the statute itself.'"

*Hallstrom v. Tillamook County*, 493 U.S. 20, 25 (1989) (*quoting Consumer Prod. Safety*

---

[5] "Tax administration" is defined in 26 U.S.C. § 6103(b)(4) as:

    **(i)**    the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

    **(ii)**    the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

    **(B)**    includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

[6] Section 6103(k)(3) provides that "the Secretary" may disclose return information. The authority to make a determination under section 6103(k)(3) and exercise the Secretary's discretion is delegated to the Director of the Privacy, Governmental Liaison and Disclosure Division, and the Chief of the Communications and Liaison Division, and may not be re-delegated.  Internal Revenue Manual 1.2.49 - Delegations of Authority for Communications, Liaison and Disclosure Activities.

*Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993) (citations and internal quotation marks omitted).

A plain reading of section 6103(k)(3) makes clear that this provision puts the disclosure of tax return information to correct a misstatement of fact within the Secretary's discretion, upon consent of the Joint Committee on Taxation:

> [T]he Secretary *may*, but only following approval by the Joint Committee on Taxation, disclose such return information or any other information with respect to any specific taxpayer to the extent necessary for tax administration purposes to correct a misstatement of fact published or disclosed with respect to such taxpayer's return or any transaction of the taxpayer with the Internal Revenue Service.

26 U.S.C. § 6103(k)(3)(emphasis added).[7]

The word *may* has a plain and straightforward meaning. Its inclusion in the language of the statute makes the Secretary's action permissive, rather than mandatory. "That language contains no explicit limit or condition, and we have emphasized that the "word 'may' clearly connotes discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)); *see also*, *United States v. Reeb*, 433 F.2d 381, 383 (9th Cir. 1970); *Thompson v. Clifford*, 408 F.2d 154, 158 (D.C. Cir. 1968).

---

[7] While section 6103(b)(1) and (2) distinguish between returns and return information, section 6103(k)(3) provides for the disclosure of return information and other information. It is possible that section 6103(k) does not permit the disclosure of returns since Congress did not include the term "returns" in (k)(3). Because for all the reasons explained in our opening brief and here, there is no procedure, much less a cause of action under the FOIA or the APA, to obtain access under section 6103(k)(3), the Court need not decide whether the Secretary may disclose returns under section 6103(k)(3).

### A. 26 U.S.C. § 6103(k)(3) Does Not Allow a FOIA Requestor to Force the Disclosure of Third-Party Taxpayer Return Information.

The statute's use of *may* is enough to put the issue to rest, but the remaining provisions in section 6103(k)(3) are instructive. The phrase "to correct misstatements of fact to the extent necessary for tax administration purposes" is further evidence that Congress intended 6013(k)(3) to be discretionary. The determination as to whether there is a misstatement of fact that impacts tax administration depends, in the first instance on the Secretary's judgment, and thereafter upon the judgment of the Joint Committee on Taxation members. Members of the public are not in a position to evaluate whether there has been published a misstatement of fact that affects tax administration; by law, they are not privy to the return information so as to know whether the statement published was correct or not. Similarly, the public is not in a position to determine whether a statement, even if incorrect, would affect tax administration. The Secretary or his delegate, in contrast, is in a position to evaluate whether a misstatement of fact affecting the tax administration has occurred, and whether a release of certain return information is necessary to protect the integrity of tax administration within the United States. And then, only if the members of the Joint Committee on Taxation agree with Secretary's evaluation is a disclosure permissible. Given the discretionary determinations that must be made under section 6103(k)(3), it would make little sense if members of the public could invoke the statute to force disclosure of a third-party's tax returns.[8]

---

[8] The logical extension of EPIC's position is that the court should substitute EPIC's determination for that of the Joint Committee on Taxation. Congress intended no such absurd result. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). EPIC cannot usurp for itself the determinations of the Secretary and the Joint Committee required under 26 U.S.C. § 6013(k)(3).

The examples EPIC provides in its brief in opposition illustrate this point. EPIC points to two instances where the IRS, via the Secretary or his delegate, asked the Joint Committee on Taxation for permission to release taxpayer return information under 26 U.S.C. § 6103(k)(3). (*See Opp'n* at 15). In both instances, the Secretary determined that certain misstatements of fact had eroded public confidence or otherwise damaged the tax administration system. It is clear that the Secretary, based upon his own expertise and specialized knowledge of the system of taxation, determined that a threat existed to the integrity of the administration of tax and pursued such a disclosure. *See, e.g.*, IRS, *Commissioner Egger's Remarks on Abusive Tax Shelters* (Oct. 6, 1981), 1981 WL 176410 at *3 ("We think it is essential, despite the cost and effort, to enforce the laws violated by these individuals, and to demonstrate to the public that these tactics should not be attempted by others."). Notably, but unsurprisingly, EPIC cannot point to a single instance in which a court ordered the disclosure of records under the FOIA in conjunction with section 6103(k)(3).[9] EPIC's attempt to force its nonexistent right to access and use the FOIA to force disclosure of third-party tax return information absent the consent of the third party has no legal support.

**B. Allowing the Public to Obtain Disclosure of Third-Party Tax Return Information under 26 U.S.C. § 6103(k)(3) Would Conflict with 26 U.S.C. § 6103(a).**

As discussed above, 26 U.S.C. § 6103(a) broadly protects tax return information from disclosure, subject to enumerated exceptions. EPIC asserts that, because it has identified what it calls conflicting public statements regarding the sought-after tax returns, it is entitled to pair the FOIA with section 6103(k)(3) to seek the disclosure of a third-party's tax returns without the

---

[9] The Service could not find a case in which the Court compelled the Secretary of the Treasury to request approval to disclose third-party tax returns from the Joint Committee on Taxation.

taxpayer's consent, by forcing the Secretary to seek permission from the Joint Committee on Taxation for such a release.

EPIC's logic, if taken to its conclusion, would substantially alter the taxpayer protections in section 6103(a). Section 6103 was structured to broadly protect all returns and return information, with specific permissible disclosures for limited purposes. *See Church of Scientology of California v. I.R.S.*, 792 F.2d 153, 158–59, (D.C. Cir. 986) ("We think similarly heightened protection was intended with regard to tax information, in order to encourage the full, voluntary self-assessment of taxes upon which our internal revenue system largely depends."), *aff'd*, 484 U.S. 9 (1987). Individuals seeking a third-party taxpayer's protected returns or return information have a statutory provision that allows their access. *See* 26 U.S.C. § 6103(c). EPIC contends, however, that section 6103(k)(3), which was designed to allow the Secretary to protect tax administration by correcting misstatements when necessary, provides an alternate method of obtaining third party tax return information when a requestor is otherwise prohibited from obtaining that information. In fact, EPIC argues that 6103(k)(3) *compels* the IRS to make the necessary determinations and seek the Joint Committee on Taxation's approval whenever a FOIA request simply identifies two supposedly conflicting public statements regarding a taxpayer's return information and alleges that such a "misstatement of fact" negatively affects the tax administration of the United States. There is no basis to conclude that, in a statute crafted to protect taxpayer privacy, section 6103(k)(3) should be read as compelling such actions.

## II.   THE COURT SHOULD DISMISS COUNTS IV AND V BECAUSE THE FOIA PROVIDES AN ADEQUATE REMEDY IN THIS CASE.

The parties agree that relief is unavailable under the APA when the FOIA provides an adequate remedy. *Pl. Opp'n* at 23; 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *Citizens for Responsibility and Ethics in Washington ("CREW") v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). EPIC incorrectly contends, however, that its APA claims should remain because the FOIA does not provide an adequate remedy in this case.

### A.   EPIC Incorrectly Conflates the Concepts of "Remedy" and "Relief."

EPIC's opposition is based on a misunderstanding of the law. EPIC conflates the ideas of "remedy" and "relief" to suggest that if it does not receive the *relief* it requests, then the FOIA has failed to provide an adequate *remedy*. But whether the FOIA provides an adequate remedy is an entirely distinct question from whether EPIC is entitled to relief. *See CREW*, 846 F.3d at 1246.

"Relief" is the result that a Plaintiff seeks in his case. Here, the relief EPIC seeks is the disclosure of President Trump's tax returns.[10] By contrast, a "remedy" is the availability of relief in the statute. *See CREW*, 846 F.3d at 1244 (describing remedy as the "availability of the relief sought" in the FOIA). Here, the FOIA provides the *remedy* EPIC seeks – it provides a mechanism for obtaining agency records. Put simply, EPIC seeks the disclosure of records, and

---

[10] EPIC also asks the Court for other relief, such as to "hold unlawful and set aside the IRS' rejection of EPIC's FOIA Request" and to "order Defendant to immediately conduct a reasonable search for all responsive records." (Compl., Dkt. No. 1, "Requested Relief"). However, this additional relief is not sought in its own right, but as an intermediate steps towards the release of the tax returns.

the FOIA statute provides for the disclosure of records generally. Thus, regardless of whether EPIC is entitled to relief here, EPIC cannot maintain its claims under the APA.

In *CREW*, the Plaintiff filed suit under the APA to compel the Department of Justice to meet its reading-room obligations under the FOIA. *CREW*, 846 F.3d at 1238. CREW brought the case as an APA claim rather than a FOIA claim because it was "[c]oncerned that FOIA's remedial provision [did] not empower a district court to order all the relief necessary to force an agency to meet its reading-room obligations." *Id.* at 1241. On appeal, the D.C. Circuit set out a two-step framework for determining whether an adequate remedy existed under the FOIA to preclude APA review. First, a court should determine whether the FOIA statute gives it "the power" to provide the requested relief. *Id.* at 1242-43. If the relief sought is available under the FOIA, the APA claim is precluded and the inquiry ends there. *Id.* at 1241.

But when the requested relief is not available under the FOIA, the court must move on to the second step, and determine whether the relief that *is* available under the FOIA provides an "adequate remedy." *Id.* at 1244. An adequate remedy exists where there is "'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Id.* (*citing Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). The requisite legislative intent exists where Congress has provided "an independent cause of action or an alternative review procedure" or a "*de novo* district court review of a claim." *Id.*

The *CREW* Court held that the FOIA offered an "adequate remedy" within the meaning of 5 U.S.C. § 704, because the FOIA's "special and adequate review procedure[s]" exhibited the requisite Congressional intent to provide an adequate substitute. *Id.* at 1245. Importantly, the D.C. Circuit also noted the difference between its conclusion that the FOIA provided an adequate remedy, and CREW's assertion that it was entitled to relief. The Court made clear that its

"determination that FOIA [was] the proper vehicle for CREW's claim [was] entirely distinct from the question of whether CREW [was] entitled to relief." *Id.* at 1246. The Court further stated that "even if CREW prevail[ed] on the merits, our conclusion that certain relief is *available* under the FOIA says nothing about its propriety in a certain case." *Id.*

In this case, the FOIA provides a mechanism for the disclosure of agency records – which is the ultimate relief EPIC seeks – and so an action under the APA is unavailable.   But even if EPIC contends that it is seeking specific forms of relief not contemplated by the FOIA, EPIC's APA claims fail because the remedies provided for by the FOIA are adequate ones, and Congress intended the FOIA to preclude review under the APA.

Despite the D.C. Circuit's clear distinction between "remedy" and "relief," EPIC insists that if *relief* is denied under the FOIA, then its APA claims should be allowed. (*Opp'n* at 23). EPIC is simply wrong on this point and its argument ignores the teaching of *CREW*. EPIC also incorrectly states that "the IRS argues that FOIA does not provide a *remedy* because EPIC did not obtain a written taxpayer authorization." (*Opp'n* at 23). The IRS certainly believes that EPIC is not entitled to *relief* under the FOIA because EPIC did not obtain a written taxpayer authorization; however, the FOIA absolutely provides an adequate *remedy*.

**B.  EPIC's Reliance on *Pohl* and *Roberts* Is Misplaced.**

EPIC relies on two cases to support its argument that judicial review remains available under the APA. However, these cases cannot support the weight of EPIC's argument.

In *Pohl v. EPA*, the Court allowed the plaintiff's APA claims to survive because the underlying documents that Plaintiff sought were not "agency records" subject to the FOIA. *Pohl v. EPA*, No. 09-1480, 2012 WL 762083, at *9 (W.D. Penn. Mar. 7, 2012). The FOIA could not provide an adequate remedy in *Pohl* because the EPA did not have possession of the requested

documents, and the FOIA can only compel an agency to produce records in its possession. *Id.*

Unlike *Pohl*, the records that EPIC seeks here – to the extent they exist – would be in the

possession of the IRS. Consequently, the holding in *Pohl* is inapplicable to this case.

In *Roberts v. IRS*, the Court also allowed the plaintiffs' APA claims to survive on the

ground that the requested relief was unavailable under the FOIA. *Roberts v. IRS*, No. 8:13-cv-

1731, 2014 WL 1724383, at *4 (M.D. Fl. Mar. 17, 2014). Plaintiffs' complaint alleged that the

IRS criminally prosecuted the Plaintiffs in bad faith, and that later, the IRS unlawfully withheld

agency records about the prosecution. *Roberts v. IRS*, No. 8:13-cv-1731, Dkt. No. 1. The

Complaint not only sought review of the records under the FOIA, but also sought testimony

under oath from various special agents. *Id.* The Court allowed the APA claims to survive

because the complaint sought other forms of relief outside the FOIA – including testimony from

the special agents involved in the criminal prosecution. Unlike *Roberts*, the relief that EPIC

seeks here – access and disclosure of responsive, non-exempt records – is available under the

FOIA. As a result, *Roberts* is inapplicable to this case.

**C.  The Remedies EPIC Seeks Can Be Determined at This Juncture.**

Finally, EPIC argues that "APA relief must remain available to the extent that any of

EPIC's requested remedies *might* fall outside of the Court's FOIA authority." (*Opp'n* at 24)

(emphasis added). EPIC suggests that it is "premature" to dismiss EPIC's APA claims at this

"early stage" of litigation because it could "later turn out that an appropriate remedy is available

to EPIC under the APA but not the FOIA." (*Opp'n* at 24 (*citing Powell v. IRS*, No. 16-1682,

2017 WL 2533348, at *10 (D.D.C. June 9, 2017)).

EPIC's argument fails because the determination of remedies available under the FOIA is

a purely legal matter. Unlike the *Powell* case, in which factual issues remained unresolved, the

14

determination of what remedies are statutorily available under the FOIA is a question of statutory

interpretation. "Issues of statutory interpretation are questions of law." *Amoco Oil Co. v. United

States*, 234 F.3d 1374, 1377 (Fed. Cir. 2002); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928,

933 (11th Cir. 2000); *see also*, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241

(1989). The remedies available to EPIC under the FOIA can be determined as a matter of law at

this time. And, because the FOIA provides for the remedies EPIC seeks, the Court should

dismiss EPIC's APA claims in Counts IV and V.

### III.   EPIC LACKS STANDING TO ASSERT ITS APA CLAIMS.

In the event that EPIC's APA claims are not precluded by the FOIA, EPIC argues that it

has standing to assert its APA claims because EPIC has properly alleged that it suffered an

informational injury. EPIC's argument fails because it requires conflating two separate statutes –

the FOIA and 26 U.S.C. § 6103(k)(3) – in order to achieve the necessary "informational injury."

EPIC cannot show that its purported informational injury would be redressed by a favorable

decision, as it is purely speculative as to whether the Joint Committee on Taxation would allow

the release of President Trump's tax returns. Finally, EPIC's argument that its injury is within

the "zone of interest" protected by 26 U.S.C. § 6103(k)(3) also fails.

To achieve standing under the APA, EPIC must show that (1) it has suffered an "injury in

fact" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical;" (2) there must exist "a causal connection between the injury and the conduct

complained of;" and (3) it must be "likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d 989, 991-992 (D.C.

Cir. 2016) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). EPIC must also

show why it is within the zone of interests of section 6103(k)(3). *See Water Transp. Ass'n v. I.C.C.*, 819 F.2d 1189, 1193-94 (D.C. Cir. 1987).

### A. EPIC Fails to Show It Has Suffered an Informational Injury under Any Particular Statute.

EPIC alleges that it has suffered an informational injury. "A plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992. With respect to Count V, EPIC alleges it submitted FOIA requests, that it has not received a response to its request because the IRS "unlawfully failed to seek permission from the Joint Commission (*sic*) on Taxation to release the records EPIC has requested," and that EPIC has been "harmed" by the delay created by the IRS' failure to seek permission from the JCT. (*Opp'n* at 21).

EPIC lacks standing for Count V because it attempts to combine two statutes together – the FOIA and 26 U.S.C. § 6103(k)(3) – to confer the requisite "informational injury" needed to achieve standing. EPIC conspicuously never states which "statute" it is that "requires the government . . . to disclose to it" the information. (*Opp'n* at 21). Instead, EPIC makes vague assertions that "it was deprived of information that . . . a statute requires the government . . . to disclose to it" and that EPIC was denied what it was owed by statute." (*Opp'n* at 21).

EPIC must conflate the two statutes – the FOIA's mandate that agencies "make records promptly available" upon request, and 26 U.S.C. § 6103(k)(3)'s discretionary exception to the rule of confidentiality – in order to create the appearance of informational standing in Count V. But for all the reasons explained in our opening brief and above, neither statute provides the

relief EPIC seeks, and combining them adds nothing. EPIC cannot pick elements from each statute, ignoring the words it finds unhelpful, in order to cobble together a claim of informational injury.

### B.  EPIC Lacks Standing Because It Fails to Demonstrate that Its Informational Injury Would Be Redressed by a Favorable Decision.

To demonstrate standing, EPIC must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d at 991-992 (*citing Lujan*, 504 U.S. at 560-61). Here, however, any relief is purely speculative.

Under section 6103(k)(3), return information may only be disclosed if the Secretary decides to request its disclosure and, even then, only "following approval by the Joint Committee on Taxation." But there is no guarantee that the Joint Committee on Taxation would approve such a request. EPIC seeks to have the Court do the following: (1) conclude that public misstatements of fact impairing tax administration exist and that these misstatements could be repaired with a public disclosure of the tax returns; (2) disregard the statute's clear language that the decision to seek approval from the Joint Committee on Taxation is wholly within the Secretary's discretion; and (3) order the Secretary to request approval from the Joint Committee on Taxation to disclose the returns. But even after that unlikely series of actions, there is no guarantee that the Joint Committee on Taxation would grant the Secretary's request.

The discretion of the Joint Committee on Taxation to disclose third party returns, which EPIC does not dispute, is a procedural dead end because there is no way to force the Joint Committee on Taxation to release the returns. Thus, EPIC cannot show that it is "likely" – as opposed to entirely speculative – that it would obtain the tax returns it seeks even if it received a

favorable decision from this Court. EPIC thus cannot demonstrate that it has standing under the APA.

### C.  EPIC Lacks Standing because It Fails to Show Why It Is within the Zone of Interests Protected by 26 U.S.C. § 6103(k)(3).

Finally, EPIC fails to show why it is within the zone of interests protected 26 U.S.C. § 6103(k)(3). *See Water Transp. Ass'n*, 819 F.2d at 1193-94. Under this prudential standing requirement, EPIC bears the burden of showing why the interest asserted by it here is one intended by Congress to be protected or regulated by the statute under which suit is brought." *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 50 (D.C. Cir. 1983); *Am. Inst. of Certified Public Accountants v. IRS*, 199 F. Supp. 3d 55, 61-62 (D.D.C. 2016) (Boasberg, J.), *appeal pending*.

Here, EPIC claims that it is within section 6103(k)(3)'s zone of interest because "Congress intended that covered records should be public 'as a matter of policy' or when the public interest in disclosure 'outweighed any possible invasion of the taxpayer's privacy which might result.'" Similarly, EPIC claims that it is within section 6103(k)(3)'s zone of interest because section 6103 allows disclosure "to the public at large" rather than "specified private individuals." (*Opp'n* at 22). But, as discussed above, there is no evidence that Congress intended private parties such as EPIC to have a say regarding whether specific third party records should be released to the public to correct a purported misstatement of fact for tax administration purposes. Instead, the plain language of section 6103(k)(3) makes clear that Congress decided to leave such questions to the discretion of the Secretary and the Joint Committee on Taxation. EPIC provides no basis for why it should be allowed to request access to records or compel disclosure under this provision, and the Court should dismiss EPIC's APA claims for lack of standing.

IV.     **THE COURT SHOULD DISMISS EPIC'S APA CLAIMS BECAUSE THEY FAIL TO STATE
CLAIMS UPON WHICH RELIEF CAN BE GIVEN.**

### A.  EPIC Fails to Allege Sufficient Facts to State a Plausible Claim that the IRS' Actions Were Arbitrary and Capricious.

Count IV of EPIC's complaint fails to allege *any* facts to plausibly show that the IRS'

decision to close EPIC's First and Second Records Requests were arbitrary, capricious, an abuse

of discretion, not in accordance with the law, or short of statutory right under 5 U.S.C.

§§ 706(2)(a) or (c).

In its opposition, EPIC now argues that the IRS's closing of EPIC's FOIA request was

arbitrary and capricious because "the IRS' only asserted reason for closing EPIC's request –

incompleteness – was not a lawful one." (*Opp'n* at 25).

EPIC's argument fails for two reasons. First, EPIC's claim in its brief that the IRS'

closure was arbitrary and capricious *because* it was based on incompleteness, which in turn was

an unlawful decision, is not an allegation that is made in the complaint. EPIC makes the

necessary connections between these facts – *i.e.,* that the IRS's closure was based on

incompleteness, and therefore unlawful, and therefore arbitrary and capricious – for the first time

in its opposition brief.

Second, the actual FOIA requests and correspondence at issue rebut EPIC's arguments.

The Court may consider the two FOIA requests made by EPIC and the two letters sent to EPIC

from the IRS in response to EPIC's requests. (*See* Young Decl., Ex. A-D).[11] These letters

demonstrate that the IRS closed EPIC's First and Second Records Requests because EPIC failed

---

[11] These documents may be considered by the Court without converting the motion to dismiss to
one for summary judgment. When ruling on Rule 12(b)(6) motions to dismiss, the court may
examine documents incorporated into the complaint by reference, matters of which a court may
take judicial notice, and other "documents upon which the plaintiff's complaint necessarily
relies," even if produced by the defendant. *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46
(D.D.C. 2009); *see also*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

to provide the authorizations that were required by the Treasury regulation that implemented the FOIA. *See* 26 C.F.R. § 601.702(c)(5)(iii)(C). When the Court views the allegation of arbitrary and capricious behavior with this additional evidence, EPIC's allegations of an "unlawful closure" are insufficient to rise above the APA's "deferential" standard, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007), which "presume[s] the validity of agency action," *Southwestern Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1352 (D.C. Cir. 1999), and which precludes the Court from substituting its judgment for that of the agency. Consequently, EPIC's allegations fail to put forth facts that plausibly give rise to an entitlement of relief under 5 U.S.C. § 706(2), and the Court should dismiss Count IV for failure to state a claim upon which relief can be given. *See Iqbal*, 556 U.S. at 679; *see also See e.g., Jean-Pierre v. BOP,* 880 F. Supp. 2d 95 (D.D.C. 2012) (finding that the requester never properly submitted a FOIA request in non-compliance with all agency FOIA regulations; therefore, finding that the request's FOIA complaint was subject to dismissal).

### B.  EPIC Does Not, and Cannot, Plausibly Allege that the IRS Unlawfully Withheld Agency Action.

Count V of EPIC's complaint fails to state a claim that the IRS unlawfully withheld agency action by failing to seek permission from the Joint Committee on Taxation. Under 5 U.S.C. § 706(a), "a claim . . . can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action ***that it is required to take***." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1098 (D.C. Cir. 2015) (emphasis added). Here, neither the FOIA nor 26 U.S.C. § 6103(k)(3) *requires* the Secretary of the Treasury to "seek permission from the Joint Commission (*sic*) on Taxation to release the records EPIC has requested." (Compl. ¶ 72). It is solely in the Secretary's discretion both to seek approval by the

Joint Committee on Taxation, and then, if that approval is received, to release that information if he believes doing so is necessary for "tax administration purposes."

In an effort to gloss over the absence of the requirement of a mandatory duty, EPIC asserts that the FOIA's language that "an agency shall . . . take reasonable steps necessary to segregate and release nonexempt information" "requires" the Secretary to seek approval from the Joint Committee on Taxation. (*Opp'n* at 26-27). EPIC asks the Court to hold that the discretionary actions described in section 6103(k)(3) qualify as a "non-discretionary' duty amounting to 'a specific, unequivocal command." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (*citing Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004)).

This argument fails because the FOIA cannot turn a discretionary action into a mandatory action. Plaintiff cannot use the FOIA to *force* agencies to take discretionary actions simply because the requestor filed a FOIA request. Consequently, EPIC has failed to allege that the IRS failed to take a discrete agency action that it is *required* to take, and the Court should dismiss Count V for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Internal Revenue Service requests that the Court dismiss EPIC's Complaint in its entirety with prejudice.

21

Dated: July 3, 2017

DAVID A. HUBBERT
Acting Assistant Attorney General

*/s/ Kieran O. Carter*
KIERAN O. CARTER
Virginia Bar No. 81953
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-616-1920 (v)
202-514-6866 (f)
Kieran.O.Carter@usdoj.gov
*Attorney for the Internal Revenue Service*

*/s/ Megan E. Hoffman-Logsdon*
MEGAN EILEEN HOFFMAN-LOGSDON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
202-616-3342 (v)
202-514-6866 (f)
Megan.E.Hoffman-Logsdon@usdoj.gov
*Attorney for the Internal Revenue Service*

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

*Counsel for Plaintiff*
Alan Butler, Esq.
butler@epic.org
Marc Rotenberg, Esq.
rotenberg@epic.org
Electronic Privacy Information Center
1718 Connecticut Ave. N.W.
Suite 200
Washington, D.C. 20009

*/s/ Megan E. Hoffman-Logsdon*
MEGAN E. HOFFMAN-LOGSDON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-616-3342 (v)
202-514-6866 (f)
Megan.E.Hoffman-Logsdon@usdoj.gov
*Attorney for the Internal Revenue Service*