**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**INTERNAL REVENUE SERVICE,**<br><br>**Defendant.** | **Civil Action No. 17-670 (JEB)** |

**MEMORANDUM OPINION**

Like many Americans, Plaintiff Electronic Privacy Information Center wants to see President Donald J. Trump's personal income-tax returns. To that end, it has sent Defendant Internal Revenue Service two Freedom of Information Act requests, seeking "all of Donald J. Trump's individual income tax returns for tax years 2010 forward, and other indications of financial relations with the Russian government or Russian businesses." Each time, the IRS responded that the request was incomplete — and therefore could not be processed — absent President Trump's consent to release his tax information. EPIC thus brought the present lawsuit to compel disclosure.

In now seeking dismissal, the IRS argues that EPIC cannot initiate a FOIA suit without perfecting its initial request. EPIC retorts that an exception to the consent prerequisite exists via Congress's Joint Committee on Taxation, which may approve disclosure. Yet, the Committee has not acted, and the IRS has no obligation to request that body to do so. As a result, until President Trump or Congress authorizes release of the tax returns, EPIC (and the rest of the

American public) will remain in the dark. The Court, powerless to offer relief, will thus grant the Motion and dismiss the case.

## I. Background

EPIC is a non-profit organization focused on issues relating to privacy and civil liberties and dedicated to the oversight of government activities. See ECF No. 1 (Complaint), ¶ 7. It is, in this case, interested in President Trump's personal income-tax returns. As Plaintiff puts it, "In the history of the United States, there has never been greater interest in the public release of an individual's tax records than those of Donald J. Trump." Id., ¶ 9.

EPIC first requested this information from the IRS on February 16, 2017. See ECF 14-2 (Declaration of Michael C. Young), Exh. A (First FOIA Request). The organization's letter sought "all of Donald J. Trump's individual income tax returns for tax years 2010 forward, and any other indications of financial relations with the Russian government or Russian businesses." Id. at 1. In support of its request, EPIC cited an ongoing "Congressional investigation and widespread public interest," a "long-standing tradition of U.S. Presidents" releasing returns, and concern over the President's possible "financial dealings with a foreign adversary." Id. at 1-2.

The IRS responded two weeks later, on March 2, 2017. See Young Decl., Exh. B (First FOIA Response). It wrote that the Internal Revenue Code prohibited release of a third party's return information unless EPIC established in its request that it had the taxpayer's consent. Id. at 1 (citing I.R.C. § 6103; Treas. Reg. § 601.702(c)(4)-(5)). "Without such authorization," the IRS wrote, "the request is incomplete and cannot be processed." Id. The agency proceeded to close EPIC's request. Id.

On March 29, EPIC replied with another letter, this time both appealing the initial IRS response and renewing its request for disclosure. See Young Decl., Exh. C (Second FOIA

Request). The second request sought substantially the same information: "Donald J. Trump's tax returns for tax years 2010 forward and any other indications of financial relations with the Russian government or Russian businesses." Id. at 1. EPIC further alleged, this second time, that it had a right to those documents under § 6103(k)(3) of the Internal Revenue Code. Id. at 1-8. The Court will delve into that section later, but briefly notes here that it allows the Secretary of the Treasury Department (which the IRS is part of), in certain situations, to disclose tax information to correct a public "misstatement of fact" regarding a taxpayer's return information if Congress's Joint Committee on Taxation has given permission.

EPIC alleged that Trump had indeed made several misstatements to the public. Specifically, he had insisted on Twitter (and, in substance, elsewhere):

> For the record, I have ZERO investments in Russia.
>
> Russia has never tried to use leverage over me. I HAVE NOTHING TO DO WITH RUSSIA - NO DEALS, NO LOANS, NO NOTHING!

See @realDonaldTrump, Twitter (July 26, 2016, 3:50 PM); id. (Jan. 11, 2017, 4:31 AM). Believing these assertions to be "directly contradicted" by investigative reporting and a statement by a member of his immediate family, EPIC argued that § 6103(k)(3) gave the IRS "legal authority to make the tax records available in response to a Freedom of Information Act request." Second FOIA Request at 4-5, 7 (misattributing statement by Donald Trump Jr. to son-in-law and White House advisor Jared Kushner).

On April 4, after a few days passed, one of EPIC's attorneys and the IRS disclosure manager participated in a telephone call regarding this request. See Compl., ¶ 45; see also ECF No. 15-1 (Declaration of John Davisson), ¶ 5. On that call the Service told the organization that "we're not going to do a (k)(3)" and that "we're not exercising (k)(3)" — referring to the § 6103(k)(3) misstatement-of-fact provision. See Compl, ¶ 46; see also Davisson Decl., ¶ 7.

Two days later, on April 6, the agency followed up with a written response. See Young Decl., Exh. D (Second FOIA Response). Its letter first informed EPIC that "the Service will not consider an appeal of an incomplete FOIA request that cannot be processed." Id. at 1. The missive then stated that "§ 6103(k) does not afford any rights to requesters under the FOIA to the disclosure of tax returns or return information of third parties." Id. Because EPIC still had not obtained President Trump's authorization to view his tax information, the IRS again closed the request as incomplete. Id. at 2. The Service added that "any future requests regarding this subject matter will not be processed." Id.

EPIC subsequently filed this lawsuit. Its Complaint states several causes of action: three FOIA counts alleging that the IRS failed to respond substantively by the statutory deadline, failed to take reasonable steps to release information, and unlawfully withheld agency records; and two APA counts asserting that the Service unlawfully closed the FOIA requests and failed to seek § 6103(k)(3) authorization from the Joint Committee on Taxation to release the tax-return information. See Compl., ¶¶ 54-75. Plaintiff thus requests as relief the disclosure of all responsive, non-exempt tax records. Id., Requested Relief, ¶¶ A-H.

Defendant's Motion to Dismiss these claims is now ripe.

## II. Legal Standard

Because Defendant's reasons for dismissal properly fall under Federal Rule of Civil Procedure 12(b)(6), the Court sets forth that legal standard. Rule 12(b)(6) permits a Court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." In evaluating the motion, the Court must likewise "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting

Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

This pleading standard is "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), as a count will survive so long as there is a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Dura Pharm., 544 U.S. at 347). While "detailed factual allegations" are not necessary to withstand a dismissal motion, id. at 555, the Complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In other words, a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint may survive even if "'recovery is very remote and unlikely'" or the veracity of the claims are "doubtful in fact" if the factual matter alleged in the complaint is "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. Analysis

At bottom, EPIC wants the IRS to reveal another person's income-tax returns without his consent. Although those returns happen to belong to President Trump, that fact does not alter the outcome here. What steps a private individual must take to make such a Freedom of Information Act request and whether she can proceed in court is at the heart of any such tax-records dispute.

Answering this question necessitates understanding the principal federal sunshine law — the Freedom of Information Act. Congress enacted FOIA with a "broadly conceived" purpose "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotations omitted). The Act lets private individuals request records from federal agencies. See 5 U.S.C. § 552(a)(3)(A). But, as with any government workings, some formalities must be followed.

FOIA's own statutory preliminaries are rather "minimal." Hinojosa v. Dep't of Treasury, No. 06-215, 2006 WL 2927095, at *4 (D.D.C. Oct. 11, 2006); accord Dale v. IRS, 238 F. Supp. 2d 99, 103 (D.D.C. 2002). An individual looking for documents need only send an agency a request that (1) "reasonably describes" the records sought and (2) follows "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); see DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754-55 (1989).

It is at this initial juncture, however, that the parties' positions diverge. Defendant believes that EPIC's Complaint is doomed because it has not followed the "published rules" — namely, Treasury regulations — on obtaining President Trump's consent before requesting his confidential tax documents and because the organization cannot bring an Administrative Procedure Act challenge to circumvent the FOIA process. Plaintiff, on the other hand, thinks these procedural requirements are unnecessary to requesting his tax returns.

It is the Government that has the better of the arguments. The Internal Revenue Code and the various Treasury regulations on FOIA well articulate what must happen for the public release of an individual's private return information. EPIC must either obtain President Trump's consent to initiate a FOIA request or, as the organization itself suggests, convince Congress's Joint

Committee on Taxation to sign off on the IRS's disclosure. As neither of these key missing actions can happen in court, Plaintiff's claims must be dismissed.

In spelling out why this is necessarily so, the Court first discusses the FOIA claims before turning to the APA counts, which are closely related.

A. FOIA Claims

Defendant first asks to dismiss the FOIA counts on the ground that EPIC has not even sent a valid request in accordance with various Treasury regulations, which embody the "published rules" that state the "procedures to be followed" when asking for records. See 5 U.S.C. § 552(a)(3)(A). The IRS contends that those rules specify that, in a proper FOIA request, a person seeking another's tax returns must also submit proof of third-party consent to have that information released. Without that consent, there is no FOIA request to investigate, let alone litigate.

Courts often talk about the need to abide by agency procedures as the "exhaustion" requirement. Such "[e]xhaustion of administrative remedies is generally required before filing suit in federal court." Oglesby v. Dep't of Army, 920 F.2d 57, 61 (D.C. Cir. 1990). A plaintiff's "failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust" and generally subjects the case to dismissal. West v. Jackson, 448 F. Supp. 2d 207, 211 (D.D.C. 2006); see Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (affirming Rule 12(b)(6) dismissal for failure to exhaust); Hinojosa, 2006 WL 2927095, at *4 ("Failure to file a perfected request constitutes failure to exhaust administrative remedies and subjects the requesting party's suit to dismissal."). To "maintain a civil action," a litigant must thus first "properly initiate[]" FOIA's administrative process by following each agency's "published rules" on request procedures. Brown v. FBI, 675 F. Supp. 2d 122, 126 (D.D.C. 2009); see, e.g., Oglesby, 920 F.2d

at 66-67 (requiring litigant to comply with published rules on fees before proceeding); see also Lewis v. DOJ, 733 F. Supp. 2d 97, 107 (D.D.C. 2010); Calhoun v. DOJ, 693 F. Supp. 2d 89, 91 (D.D.C. 2010); Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 26 (D.D.C. 2008).

These are not mere formalities to be routinely ignored, some unseemly morass of bureaucratic red tape. Rather, "[e]xhaustion has long been required in FOIA cases" as a core component of "'orderly procedure and good administration.'" Dettmann v. DOJ, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986) (quoting United States v. Tucker Truck Lines, 344 U.S 33, 37 (1952)). Complying with the regular process allows an agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Oglesby, 920 F.2d at 61. This case underscores the value of exhaustion: where this Court looks at the nation's internal-revenue system from time to time, the IRS deals with it daily.

The relevant Treasury regulations that EPIC purportedly ran afoul of require some detailing. The Court first discusses them before analyzing the flaws in the organization's specific requests and whether Internal Revenue Code § 6103(k)(3) serves as an exception.

1. *Treasury Regulations on FOIA Requests*

The IRS's "published rules" on FOIA procedures can be found in Treasury Regulation § 601.702. See 5 U.S.C. § 552(a)(3)(A); Church of Scientology of Cal. v. IRS (Church of Scientology I), 792 F.2d 146, 150 (D.C. Cir. 1986) (Scalia, J.). The failure to "perfect" a request by following this section is tantamount to a failure to exhaust administrative remedies, and, as discussed, that road typically leads only to dismissal. See, e.g., Hinojosa, 2006 WL 2927095, at *4; Flowers v. IRS, 307 F. Supp. 2d 60, 67 (D.D.C. 2004); Dale, 238 F. Supp. 2d at 103; see also Treas. Reg. § 601.702(c)(1)(i) (labeling compliant request "perfected").

The Regulation cautions requestors as much. Individuals who do not submit a request that "conforms in every respect with the rules and procedures set forth in this section" risk having their "request or appeal file . . . closed." Treas. Reg. § 601.702(c)(1)(i). This warning is repeated once more: "Requesters are advised that only requests for records which fully comply with the requirements of this section can be processed in accordance with this section." Id. § 601.702(c)(4)(i).

One requirement is especially relevant; as it has a few moving parts, the Court reproduces it in full: "The initial request for records must —"

> In the case of a request for records the disclosure of which is limited by statute or regulations (as, for example, the Privacy Act of 1974 (5 U.S.C. 552a) or section 6103 and the regulations thereunder), establish the identity and the right of the person making the request to the disclosure of the records in accordance with paragraph (c)(5)(iii) of this section.

Id. § 601.702(c)(4)(i)(E) (emphases added). To highlight the relevant portions in plain English, if Internal Revenue Code § 6103 "limit[s]" disclosure of the requested information, then the requestor must comply with the further procedural requirements set forth in Treasury Regulation § 601.702(c)(5)(iii).

There is no doubt that § 6103 limits the disclosure of personal tax records. "Returns and return information shall be confidential," and the IRS may not disclose such records. See I.R.C. § 6103(a); see also Church of Scientology of Cal. v. IRS (Church of Scientology III), 484 U.S. 9, 10 (1987) ("Section 6103 . . . lays down a general rule that 'returns' and 'return information' as defined therein shall be confidential."). This "heightened protection [i]s intended . . . to encourage the full, voluntary self-assessment of taxes upon which our internal revenue system largely depends." Church of Scientology of Cal. v. IRS (Church of Scientology II), 792 F.2d 153, 158-59 (D.C. Cir. 1986) (*en banc*) (Scalia, J.).

As disclosure is limited, the Court now looks to Treasury Regulation § 601.702(c)(5)(iii). That section states, in relevant part: "In the case of an attorney-in-fact, or other person requesting records on behalf of or pertaining to other persons, the requester shall furnish a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate." Id. § 601.702(c)(5)(iii)(C). In other words, a FOIA request seeking records about a third party must furnish evidence of that individual's consent. See Hull v. IRS, 656 F.3d 1174, 1197 (10th Cir. 2011) (citing Treas. Reg. § 601.702(c)(4)(i)(E), (5)(iii)(C)) ("Indeed, the Treasury regulations require a requester to obtain third party consent before the IRS can process a request for third party return information.").

As the D.C. Circuit recently held, these upfront procedures are permissible so long as they are "reasonable." Clemente v. FBI, No. 16-5067, 2017 WL 3443034, at *5 (D.C. Cir. Aug. 11, 2017). "An agency thus of course cannot impose requirements on requesters that take on the character of a shell game, imposing unwarranted burdens on requesters without apparent justification." Id. It is not difficult to surmise, however, why the IRS requires FOIA requestors to furnish third-party consent in this case and other similar situations. Before the Service extensively searches for an individual's return information, which is usually highly guarded, see Church of Scientology II, 792 F.2d at 158-59, it is crucial to know if the requestor maintains a genuine interest or is simply curious. Requiring consent as part of the initial request is the IRS's way of separating chaff from wheat. Absent this proof, a FOIA request for confidential third-party return information is incomplete, exhaustion is wanting, and litigation is premature. See Reedom v. Soc. Sec. Admin., 192 F. Supp. 3d 116, 122 (D.D.C. 2016); Kalu v. IRS, No. 14-998, 2015 WL 4077756, at *4-5 (D.D.C. July 1, 2015); Dale, 238 F. Supp. 2d at 103.

2. *EPIC's FOIA Requests*

Indeed, not much about how these rules play out is actually in dispute here. The pertinent facts are few. Plaintiff submitted an initial FOIA request seeking President Trump's personal income-tax returns from 2010 onward and any other indications of financial connections with the Russian government or Russian businesses. See First FOIA Request at 1. (It is unclear where EPIC believes the Service should look for the latter type of information, but it never provided proof of consent from any other individual or entity.) After the IRS closed the initial request for failure to provide the subject's consent, EPIC submitted a second letter, both appealing the first request and making out a second one for the same documents. See Second FOIA Request at 2. As that letter again attached nothing from President Trump, the appeal was rejected and the request again closed.

EPIC does not contest that, "[i]n the case of a request for records the disclosure of which is limited by statute or regulations," including Internal Revenue Code § 6103, the IRS's rules require additional FOIA compliance. See Treas. Reg. § 601.702(c)(4)(i)(E) (referencing § 601.702(c)(5)(iii)); see also Opp. (neglecting to mention § 601.702(c)(4) at all). Nor does the organization question that § 6103(a) designates "returns" or "return information" as confidential, see I.R.C. § 6103(a), or quibble with the IRS's finding that the two underlying FOIA requests seek only that sort of tax information. See Opp. at 9; see also I.R.C. § 6103(b)(1)-(2) (defining "return" and including as "return information" "the nature, source, or amount of his income, . . . assets, [or] liabilities"); cf. Hull, 656 F.3d at 1192 (upholding dismissal of FOIA action but cautioning IRS that not every request will "on its face solely seek[] . . . return information"). Last, EPIC does not contest that, for protected third-party information, Treasury regulations

generally "implement . . . a consent requirement." Opp. at 7; see also Treas. Reg. § 601.701(c)(5)(iii)(C). President Trump most certainly has not consented.

Without such consent to release otherwise confidential information, the conclusion of this tax syllogism is plain: EPIC simply has not perfected, or completed, its request, and its FOIA claims must therefore be dismissed for failure to exhaust. See Reedom, 192 F. Supp. 3d at 122; Kalu, 2015 WL 4077756, at *4-5; Dale, 238 F. Supp. 2d at 103.

3. *Section 6103(k)(3) as Exception*

Plaintiff rejoins that the game is not yet over, and it invokes a possible exception to this tried-and-true exhaustion bar. See Opp. at 7 ("These provisions simply do not apply here."). All of its arguments revolve around Internal Revenue Code § 6103(k)(3), which gives the IRS some power to correct misstatements of fact regarding taxes in particular circumstances, so long as Congress's Joint Committee on Taxation signs off on disclosure first. Because President Trump has allegedly made public misrepresentations about his personal tax information, EPIC argues that § 6103(k)(3) can be summoned to defeat the exhaustion requirement. This Court does not concur.

To start, some background on § 6103(k)(3). While § 6103(a), as discussed above, provides that taxpayer information is confidential and not subject to disclosure, "[s]ubsections (c) through (o) of § 6103 set forth various exceptions to th[at] general rule that returns and return information are confidential and not to be disclosed." Church of Scientology III, 484 U.S. at 15. These various exceptions allow, for example, disclosure to "congressional committees, the President, state tax officials, and other federal agencies." Id. Exceedingly few exceptions, however, contemplate disclosure to the public writ large. See, e.g., I.R.C. § 6103(k)(1) (permitting disclosure to "members of the general public . . . to permit inspection of any accepted

offer-in-compromise"), (m)(1) (allowing disclosure of "taxpayer identity information to the press and other media for purposes of notifying persons entitled to tax refunds").

Each exception, moreover, is of limited scope and subject to "special safeguards." Church of Scientology III, 484 U.S. at 15. Section 6103(k)(3) reads:

> Disclosure of return information to correct misstatements of fact. — The [Treasury] Secretary may, but only following approval by the Joint Committee on Taxation [of the U.S. Congress], disclose such return information or any other information with respect to any specific taxpayer to the extent necessary for tax administration purposes to correct a misstatement of fact published or disclosed with respect to such taxpayer's return or any transaction of the taxpayer with the Internal Revenue Service.

Congress passed this subsection in the Tax Reform Act of 1976, Pub. L. No. 94-455, § 1202(a)(1), 90 Stat. 1520, 1667, alongside several other exceptions that "allow the disclosure of tax information for miscellaneous administrative and other purposes." H.R. Rep No. 94-1515, at 480 (1976) (Conf. Rep.), reprinted in 1976 U.S.C.C.A.N. 4117, 4184-85. Section 6103(k)(3), in particular, appears to contemplate public disclosure to correct misstatements but only for tax-administration purposes and with Congress's authorization. See I.R.C. § 6103(b)(4) (defining "tax administration").

This section is a *rara avis*. The Court, in fact, is aware of no instance where it has been successfully invoked, either in the FOIA context or otherwise. In 1981, for example, the Treasury Secretary sought the Joint Committee on Taxation's approval to disclose information on certain tax protestors to undercut their positions. See 127 Cong. Rec. S22,510 (daily ed. Sept. 30, 1981). Protest leaders had publicly made "sales pitches" that they had successfully evaded taxes, encouraging others to join in undermining the Service's revenue collection. See Ray Walden, Comment, Render unto Uncle Sam That Which Is Uncle Sam's: The IRS and Tax Protest Evangelism, 61 Neb. L. Rev. 681, 731 & n.265 (1982). The IRS knew this to be pure

bravado, but its disclosure effort seems to have been stymied by then-first-year Senator Chuck Grassley. See 127 Cong. Rec. S22,510 (statement of Sen. Chuck Grassley) (invoking Griswold v. Connecticut, 381 U.S. 479 (1965) (Douglas, J.)). Then, in 1997, the IRS Commissioner wrote the House Committee on Ways and Means and Senate Committee on Finance to "explore . . . the possibility of using Code section 6103(k)(3) to permit the IRS to correct misstatements of fact regarding" possible bias in the "examinations of tax-exempt organizations," but it does not appear that the IRS ever requested § 6103(k)(3) approval from the Joint Committee. See Staff of J. Comm. on Taxation, Report of Investigation of Allegations Relating to Internal Revenue Service Handling of Tax-Exempt Organization Matters, No. JCS 3-00, at 1 (Mar. 2000); id. at 105, Exh. 1-2 (February 25, 1997, Letter from Commissioner Margaret Milner Richardson). Brief sightings of the section in other opinions, moreover, appear to be errant citations to § 6103(k)(6). See, e.g., Maisano v. United States, 908 F.2d 408, 410-11 (9th Cir. 1990); Spence v. United States, No. 95-0811, 1996 WL 628124, at *3 (D.N.M. July 18, 1996); Tomlinson v. United States, No. 89-1518, 1991 WL 338328, at *2-3 (W.D. Wash. Aug. 20, 1991).

Hoping the past is not prologue, EPIC invokes § 6103(k)(3) here. In considering that section, the Court first assumes without deciding that President Trump's alleged misrepresentations constitute "misstatements of fact" within the meaning of the statute. See Opp. at 12-16. Because the Government also argues only in a single sentence (without citation) that such disclosure would not further "tax administration purposes," I.R.C. § 6103(k)(3), the Court next assumes — despite substantial reservations — that releasing President Trump's tax information would also satisfy that requirement. See Mot. at 17-18; see also Reply at 8 (arguing only that "[m]embers of the public are not in a position to evaluate" whether correction serves "tax administration purposes"). Still remaining, however, is the basic question of how

§ 6103(k)(3) interacts with the IRS's entirely separate FOIA requirements, especially the one on consent. FOIA's prerequisites generally carry an "across-the-board" application, regardless of whether individuals invoke § 6103(k)(3) (or any other section) in their request. Maxwell v. Snow, 409 F.3d 354, 357 (D.C. Cir. 2005) (quoting Church of Scientology I, 792 F.2d at 149); see Treas. Reg. § 601.702(c)(4)(i) (providing that all "requests for records" must "fully comply with the requirements of this section").

Even assuming § 6103(k)(3) could offer a means of negating the IRS's consent prerequisite under FOIA, the answer here is still straightforward. The plain terms of that section, which require congressional approval, foreclose any relief from the exhaustion barrier. See I.R.C. § 6103(k)(3) ("The Secretary may, but only following approval by the Joint Committee on Taxation, disclose . . . information . . . ."). In other words, the central problem is that the Joint Committee on Taxation has not approved the disclosure of President Trump's tax returns — and, in fact, it does not appear that it has ever exercised this authority in regard to anyone. Without the Committee's authorization, this potential exception to the consent requirement could not possibly apply, and EPIC's litigating this case remains premature.

Plaintiff also points to no FOIA provision or case that would obligate the IRS to seek the approval of the Committee or any other congressional body in order to produce records; in fact, the Court discusses whether even the Administrative Procedure Act compels this in Section III.b.2, *infra*. Nor does EPIC provide authority to support its contention that FOIA obligates an agency to produce records that first independently require congressional approval.

Some contrary signals might instead be drawn from United We Stand America, Inc. v. IRS, 359 F.3d 595 (D.C. Cir. 2004). In that case the Joint Committee on Taxation sent the IRS a letter (for a reason unrelated to § 6103(k)(3)), which disclaimed that it "may not be disclosed

without the prior approval of the Joint Committee." Id. at 597. While the issue there was whether this letter was a record within the IRS's control and thus subject to FOIA (it was not), the case remains instructive. Nowhere does the D.C. Circuit suggest that the Act required the Service to ask the Committee for that approval — as it very well could have done — so that the letter would become an agency record subject to disclosure. Instead, the court focused on the "congressional intent to control" and not on the steps the IRS might take to lift that control, thereby concluding that the letter was "not subject to FOIA at all." Id. at 600, 603. This aligns with the general understanding that Congress is insulated from FOIA matters. See Dunnington v. Dep't of Def., No. 06-925, 2007 WL 60902, at *1 (D.D.C. Jan. 8, 2007) ("Neither branch of Congress is an executive agency subject to FOIA."); see also Dow Jones & Co. v. DOJ, 917 F.2d 571, 574 (D.C. Cir. 1990) ("[M]embers of Congress are not within the definition of agency under FOIA."). Here, too, the Court finds no basis in FOIA to require the IRS to seek the Committee's approval so as to open wider its FOIA doors or to produce records that require such independent approval.

B. APA Claims

Having felled Plaintiff's FOIA counts, Defendant also seeks to down the two Administrative Procedure Act claims, which are closely tethered to the former ones. One of those APA claims challenges the IRS's closure of EPIC's FOIA requests as unlawful agency action. See Compl., ¶¶ 66-70. The second alleges that the Service's failure to seek § 6103(k)(3) permission from the Joint Committee on Taxation is "agency action unlawfully withheld or unreasonably delayed." Id., ¶¶ 71-75.

It is not so easy to circumvent FOIA's strictures by bringing other claims that seek the disclosure of agency records. The Court discusses, in turn, why neither of EPIC's APA salvos gets it any closer to obtaining President Trump's return information.

1. *Unlawful Agency Action*

Plaintiff first challenges the "IRS's closure of EPIC's FOIA Request" as unlawful agency action. See Compl., ¶ 67. Defendant responds, however, that the APA precludes such a claim from moving forward when relief under FOIA is available.

This question is not particularly close. The APA permits judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. There is "little doubt that FOIA offers an 'adequate remedy' within the meaning of section 704," at least when litigants seeks to "gain access to . . . records." Citizens for Responsibility & Ethics in Wash. v. DOJ, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017). "[C]ourts in this Circuit have 'uniformly' concluded that" litigants cannot bring "APA claims that seek remedies available under FOIA." Harvey v. Lynch, 123 F. Supp. 3d 3, 7-8 (D.D.C. 2015) (quoting Feinman v. FBI, 713 F. Supp. 2d 70, 76 (D.D.C. 2010)). Although some courts (and Defendant, too) characterize this as an issue that goes to the Court's "jurisdiction" to hear APA claims, the "adequate remedy bar of § 704" is more precisely an issue of "whether there is a cause of action under the APA, not whether there is federal subject matter jurisdiction." Perry Capital LLC v. Mnuchin, No. 14-5243, 2017 WL 3078345, at *21 (D.C. Cir. Feb. 21, 2017)

Critically, the remedies that EPIC seeks here in response to the IRS's closing of its FOIA requests qualify as relief under FOIA. In Plaintiff's own words, it desires the "full processing of its request, . . . the identification of nonexempt responsive documents, and ultimately . . . the release of such records." Opp. at 26; see Compl., Requested Relief, ¶¶ A-D. Of course, the

processing and production of documents is the entire point of FOIA. See CREW, 846 F.3d at 1245-46; see also Feinman, 713 F. Supp. 2d at 76 (finding APA challenges to "agency's substantive determinations" for releasing documents and issues of "agency procedure" in processing requests were both precluded by FOIA). The Court must therefore dismiss EPIC's first APA count, as it is properly nestled under FOIA instead.

2. *Action Unlawfully Withheld*

EPIC's second APA challenge alleges that the IRS's "fail[ure] to seek permission from the Joint Committee on Taxation to release the records EPIC has requested" qualifies as "agency action unlawfully withheld or unreasonably delayed." Compl., ¶¶ 72-73. The IRS responds again that there is an adequate remedy under FOIA and also maintains that EPIC has not plausibly alleged that the failure to seek Joint Committee approval under § 6103(k)(3) is agency action unlawfully withheld or unreasonably delayed.

For starters, it is not obvious that FOIA provides an adequate remedy for this APA claim. Generally speaking, no FOIA request can force the IRS or Treasury Secretary to seek the Joint Committee's permission under § 6103(k)(3). See *supra* Section III.A.3. As the adequate-remedy ground is not jurisdictional, the Court need not decide if one exists. See Perry Capital, 2017 WL 3078345, at *21. This is because the Service's second argument clearly carries the day.

The APA permits claims to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But judicial review of those non-actions is available "only if a federal agency has a 'ministerial or non-discretionary' duty amounting to 'a specific, unequivocal command.'" Anglers Conservation Network v. Pritzker, 809 F.3d 664, 670 (D.C. Cir. 2016) (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 63-64 (2004)). Unless a plaintiff has

plausibly asserted that "an agency failed to take a discrete agency action that it is required to take," S. Utah Wilderness All., 542 U.S. at 64, the Court is without "license to substitute its discretion for that of an agency." AARP v. EEOC, 823 F.2d 600, 605 (D.C. Cir. 1987). EPIC has not conquered this hurdle.

Section 6103(k)(3) does not mandate the Treasury Secretary to ever seek congressional approval. The provision reads that the "Secretary may, but only following approval by the Joint Committee on Taxation, disclose such return information or any other information with respect to any specific taxpayer." I.R.C. § 6103(k)(3). Nothing there says that the Secretary must or shall or even should consult with the Joint Committee. Reading the statute plainly, perhaps the Joint Committee might even give approval without the IRS's ever requesting it. The sparse historical practice around § 6103(k)(3) likewise underscores that it is indeed a rarely wielded discretionary power, the use of which a litigant cannot compel through the APA. This last count must thus also be dismissed.

* * *

Before wrapping up, the Court notes that it does not reach the parties' remaining arguments. It does not address Defendant's final non-jurisdictional contention that EPIC lacks the statutory authorization to bring either APA challenge on the basis that the organization falls outside the "zone of interests." See Crossroads Grassroots Policy Strategies v. FEC, 788 F.3d 312, 319 (D.C. Cir. 2015); Mendoza v. Perez, 754 F.3d 1002, 1016 (D.C. Cir. 2014); see also Mot. at 15-16 (erroneously labeling "zone of interests" test as jurisdictional). Plaintiff's claims that are absent from the Complaint and raised only in footnotes in its brief are also deemed forfeited. See, e.g., Opp. at 11 n.2; see also CTS Corp. v. EPA, 759 F.3d 52, 64 (D.C. Cir. 2014) ("A footnote is no place to make a substantive legal argument . . . ; hiding an argument there and

then articulating it in only a conclusory fashion results in forfeiture."); Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A., 793 F. Supp. 2d 124, 130 n.3 (D.D.C. 2011) (rejecting claim found in "footnote in [plaintiff's] opposition" where plaintiff "ha[d] not filed any motion to amend its Complaint").

## IV. Conclusion

What Plaintiff wants in this case is to peer into another person's income-tax records. Although the Court has no reason to doubt EPIC's assertion that the return information on this particular individual — President Trump — would be of interest to the public, that fact does not give the organization a viable legal case. Instead, there are two established routes that could offer relief: President Trump may himself agree to this release of information, or, as EPIC suggests, Congress's Joint Committee on Taxation can authorize disclosure in the appropriate set of circumstances. Absent either of these events, EPIC is premature in bringing this suit.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 18, 2017